**STATE ex rel. James M. FISCHER, Public Counsel for the State of Missouri, Relator-Appellant,**

v.

**PUBLIC SERVICE COMMISSION OF MISSOURI, Respondents,**

and

**Laclede Gas Company, Intervenor-Respondent.**

**No. 33143.**

Missouri Court of Appeals, Western District.

Nov. 9, 1982.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied Jan. 4, 1983.

Application to Transfer Denied Feb. 23, 1983.

James M. Fischer, Michael C. Pendergast, Jefferson City, for relator-appellant.

William C. Harrelson, Jefferson City, for respondents.

Donald L. Godiner, Robert M. Lee, St. Louis, for intervenor-respondent.

Before NUGENT, P.J., and TURNAGE and LOWENSTEIN, JJ.

TURNAGE, Judge.

James M. Fischer, Public Counsel, appeals from a judgment of the Circuit Court which affirmed an order made by the Public Service Commission. Fischer contends the order is illegal because it was made without statutory authority. Reversed and remanded.

On August 15, 1977, the Commission sua sponte instituted an investigation of the rate design of Laclede Gas Company.[1] The Public Counsel, Laclede, and the Commission's counsel and staff all participated in this proceeding. In addition, the Commission granted petitions for intervention by the City of St. Louis, Union-Sarah Community Corporation, a community service cor-

---

1. A rate design is the allocation (of the burden of paying a utility's overall revenue requirement) among its various customer classes. Thus, a rate design does not alter the overall revenues received by the utility, but may dramatically change the rates paid by individual customers.

poration in St. Louis representing primarily low income consumers, and a group of industries including General Motors Corporation, Monsanto Company, ACF Industries, Inc., Anheuser-Busch, Inc., McDonnell Douglas Corporation, and Nooter Corporation. Laclede, Public Counsel, the Commission staff, and the industrial intervenors all filed prepared testimonies and exhibits with the Commission prior to scheduled hearings.

In September of 1980, hearings were held in St. Louis and Clayton to hear the testimony of the general public. Thereafter, all of the parties with the exception of the Public Counsel reached a compromise regarding the rate design issues. A stipulation and agreement was filed with the Commission setting forth such an agreement. The agreement proposed that the Commission approve revenue increases for the following customer classes: general service, seasonal service, large volume service, interruptible service, general L.P. gas service, unmetered gas light service, special contracts, and sales for resale. The increases ranged from $5,300 in sales for resale, to $417,400 in the general service class. The agreement further recommended a decrease of $1,144,600 in the general space heating class. Also included in the agreement was an allocation of the rate increase that the Commission had recently granted to Laclede. The agreement recommended that declining block rates be instituted for the general space heating and seasonal service classes.

The rate design hearing was set for October 9–10, 1980, and the Public Counsel appeared at that time prepared to present his case. However, at that time the Commission informed the Public Counsel that it had adopted a "limited hearing procedure," which was a part of the recommendation made by the parties to the stipulation and agreement. The procedure set forth in the agreement provided that any non-signing party would retain its right to present its case in full or in part, and to cross-examine any witnesses of any party to the agreement on any matter pertaining to the rate design case. The agreement further provided that after any non-signing party had been accorded its right to a hearing as provided by law, the Commission would enter an order either approving or disapproving the agreement. In the event that the Commission rejected the agreement, there would be a full and contested hearing, at which time each of the parties would address all the merits and issues of the case.

In accordance with the agreement, the Commission ruled prior to the hearing that the only issue it would consider was whether or not the stipulation and agreement would be accepted or rejected, and a full and contested hearing would be held only in the event that the Commission rejected the agreement. The Commission allowed the Public Counsel's witness to present the Public Counsel's rate design proposal, and allowed the Public Counsel to cross-examine the opposing witnesses regarding their prepared testimonies. A few days later the Commission heard oral arguments, and announced that it had voted to dispose of the matter under the terms proposed in the agreement.

On October 15, 1980, the Commission entered its order. After reciting a history of the rate design investigation the order continued as follows:

### Findings of Fact

The Missouri Public Service Commission, having considered all of the competent and substantial evidence upon the whole record, makes the following findings of fact:

The purpose of the instant case is the determination of the proper distribution of the Company's cost of service within the various classes of customers. The Commission, after considering the evidence offered on October 9 and 10, 1980, and the arguments of counsel on October 14, 1980, is of the opinion that the proposed Stipulation, although not joined in by all of the parties, represents the fairest and most equitable distribution of the rates authorized in Case No. GR–80–210. The proceedings conducted in this matter provided the Commission with the oppor-

tunity to accept or reject the Stipulation. If the resolution of the case which was advocated by the signatories of the Stipulation was rejected, the case was to proceed to full hearing with all parties free to advocate their respective positions taken prior to the prehearing negotiations. In determining that the Stipulation should be adopted, the Commission has taken into consideration that it resulted from extensive negotiations between groups with varying interests and economic positions. Not only have the negotiators included large-use industrial customers, but also representatives of the City of St. Louis with its cross section of citizenry as well as representatives of a neighborhood organization. In the Commission's opinion, the Stipulation attached hereto as Appendix A and offered by those diverse groups, represents a fair and reasonable distribution of the Company's rates and should be adopted in disposition of this matter.

■ According to Section 386.510, RSMo 1973, this court's review of an appeal from an order of the Public Service Commission is limited to a determination of the order's lawfulness and reasonableness. The question of an order's lawfulness turns on whether or not the Commission had statutory authority to act as it did. *State ex rel. Beaufort Transfer Co. v. Clark,* 504 S.W.2d 216, 217[2] (Mo.App.1973).

■ Public Counsel first contends the Commission had no authority to abort the full hearing procedure and consider this matter under a limited hearing procedure. The Commission argues that under Section 386.410 RSMo 1977, it was authorized to consider this matter under the limited hear-

ing procedure adopted. That section provides that all hearings before the Commission should be governed by rules to be adopted and prescribed by the Commission, and that no procedural formalities be observed.

Upon closer examination, it is clear that Section 386.410 did not authorize the limited hearing procedure utilized in this case. It does not, as the Commission claims, give it unlimited discretion to conduct its hearings in any possible manner. Rather, it gives the Commission flexibility in its proceedings, as long as its proceedings satisfy all other statutory requirements.

■ One such section which sets forth minimal procedural requirements for Commission hearings is Section 386.420 RSMo 1978. This section guarantees that Public Counsel and all other parties to a Commission proceeding have the right to be heard and to introduce evidence. This section also states that whenever the Commission makes an investigation, "it shall be its duty to make a report in writing in respect thereto, which shall state the conclusions of the commission, together with its decision, order or requirement in the premises." In *State ex rel. Rice v. Public Service Commission et al.,* 359 Mo. 109, 220 S.W.2d 61 (1949), the court stated that this statute[2] required the Commission to include findings of fact in all of its written reports.[3] *Id.* 220 S.W.2d at 65[8].

The order entered by the Commission in this case does not meet the statutory findings of facts requirement. The findings in this case, as quoted above, are completely conclusory, and provide no insights into if and how controlling issues were resolved.[4] There are many factual issues which the

2. The 1939 version of the statute, which was relied on in *State ex rel. Rice,* was virtually identical to the current version.

3. The Administrative Procedure Act also requires that orders in all contested cases contain findings of fact. Section 536.090, RSMo 1957. This statute was applied to the Public Service Commission in *State ex rel. St. Louis Public Service Co. v. Public Service Commission,* 365 Mo. 1032, 291 S.W.2d 95, 98[2] (1956).

4. This issue has been addressed in cases not pertaining to the Public Service Commission in particular, but to administrative agencies in general. The standard required for findings of facts is set forth in *Glasnapp v. State Banking Board,* 545 S.W.2d 382 (Mo.App.1976). This court is persuaded that the findings of fact in this case are so obviously inadequate, that a discussion and application of the *Glasnapp* standard is unnecessary.

Commission would necessarily have considered before entering an order adopting a rate design for Laclede, but which are absent from the findings of fact. For example, the Commission increased the revenue from the rates in the general service class by $417,400, although Chairman Slavin stated in her concurring opinion to the order that there was no evidentiary support for this decision, except for the stipulation agreement itself. The adoption of declining block rates for general space heating and seasonal service classes also seems to have been made without evidentiary support, and was not mentioned in the findings of fact. The Commission's decision to decrease the class revenue requirement of the general space heating class by $1,144,600 was made without any findings of fact concerning the cost of services relative to this class, in comparison with the cost of services for other classes. In sum, the allocation of rates among the various classes of service rests on questions of fact. *Smith v. Public Service Commission,* 351 S.W.2d 768, 772[3] (Mo.1961). Since there were insufficient findings of fact in this case the necessary questions of fact were not resolved.

The above examples are but a few of the many findings of fact that the Commission was required to determine, but failed to address. Rather than performing its statutory duty to fix a rate design for Laclede based on findings of fact supported by competent and substantial evidence, the Commission appears to have simply adopted the stipulation agreement. This procedure is completely contrary to law, and cannot form the basis for a valid order by the Commission.

■ Public Counsel has also contended that the limited hearing procedure used in this case violated due process of law. This court has authority to examine acts of the Public Service Commission for due process violations. *State ex rel. Chicago Rock Island & Pacific Railroad Company v. Public Service Commission,* 312 S.W.2d 791, 796[2] (Mo. banc 1958).

Due process requires that administrative hearings be fair and consistent with rudimentary elements of fair play. *Tonkin v. Jackson County Merit System Commission,* 599 S.W.2d 25, 32–33[7] (Mo.App.1980) and *Jones v. State Department of Public Health and Welfare,* 354 S.W.2d 37, 39–40[2] (Mo. App.1962). One component of this due process requirement is that parties be afforded a full and fair hearing at a meaningful time and in a meaningful manner. *Merry Heart Nursing and Convalescent Home, Inc. v. Dougherty,* 131 N.J.Super. 412, 330 A.2d 370, 373–374[7] (1974).

The hearing procedure followed in this case failed to satisfy the due process requirement. Although Public Counsel was allowed to present his rate design proposal and to cross-examine the opposing witnesses, the Commission had previously decided that the only issue it would consider was whether or not to approve the stipulation and agreement. In light of this decision, the hearing afforded Public Counsel was not meaningful, in that the Commission was precluded from approving anything but the stipulated rate design in the course of the hearing in question. The question properly before the Commission was what rate design to adopt, rather than whether or not to adopt one particular proposal. Thus, the hearing procedure adopted in this case was a violation of the due process which should be accorded to Public Counsel in his capacity as the representative of the public.

In her concurring opinion, Chairman Slavin stated that she voted for the order which adopted the stipulation agreement principally because that would allow the new rates previously adopted to go into effect almost immediately, whereas if a full hearing on the merits in the rate design case was held, a decision could not take effect in the heating season of 1980–1981. She concluded that the stipulated rate design offered the most immediate solution to those rate bearers who were most adversely affected by the rate case decided just before the rate design matter. However, the exigency of a situation does not constitute grounds for the Commission to act without statutory authority.

In conclusion, the limited hearing procedure used in this case was unauthorized. By adopting the stipulation agreement rather than conducting a full and contested hearing on the rate design issue, the Commission was able to avoid making proper findings of fact. In addition, the hearing procedure in this case violated due process of law by denying Public Counsel a fair and meaningful opportunity to be heard. Thus, the order in this case is unlawful in that the Commission had no statutory authority to act as it did. The judgment of the circuit court is reversed and this cause is remanded to that court with directions to remand this case to the Public Service Commission for further proceedings.[5]

All concur.

---

5. The Public Counsel objected that the order in this case failed to certify its compliance with Section 536.080 RSMo 1957 and Section 386.-130 RSMo 1939, as discussed in *State ex rel. Jackson County v. Public Service Commission,* 532 S.W.2d 20, 30[6] (Mo. banc 1975), *cert. denied* 429 U.S. 822, 97 S.Ct. 73, 50 L.Ed.2d 84 (1976). The Commission is well aware of the certification requirement, and future orders will undoubtedly contain such certification.