**STATE ex rel. MONSANTO COMPANY, et al., Respondents,**

v.

**PUBLIC SERVICE COMMISSION OF MISSOURI, et al., Appellants.**

No. 67903.

Supreme Court of Missouri,
En Banc.

Sept. 16, 1986.

Rehearing Denied Oct. 14, 1986.

Michael C. Pendergast, Jefferson City, Robert M. Lee, Donald L. Godiner, St. Louis, Richard W. French, Jefferson City, for appellants.

Robert C. Johnson, Joseph J. Simeone, Mark S. Packer, Francis J. Hruby, St. Louis, for respondents.

DONNELLY, Judge.

Relators, Monsanto Company, Anheuser Busch, Inc., General Motors Corporation, McDonnell Douglas Corporation, and Nooter Corporation ("Industrials"), are a group of large industrial utility customers who oppose the "rate design" under the 1983 tariff of Laclede Gas Company ("Laclede"), which the Public Service Commission ("PSC") approved in rate case No. GR–83–233. "Rate design" is the method used to determine the rates to be charged to individual classes of customers. The Industrials claim that under this rate design they are charged substantially more than the actual cost to serve them.

The Circuit Court of Cole County reversed the rate design determination of the PSC Report and Order in Case No. GR–83–233 under a writ of review brought by the Industrials. The Court of Appeals, Western District, reversed, holding that the challenge to the 1983 tariff was mooted when a 1984 tariff containing the same rate design method came into effect without challenge by the Industrials.

On January 11, 1983, Laclede filed with the PSC revised rate schedules to increase its natural gas service revenues by $24,000,000, to take effect February 10, 1983. The PSC entered an order to suspend the proposed tariff rates while hearings could be held on Laclede's proposal. The Industrials were granted intervention and prefiled testimony and exhibits challenging the rate design. Their challenge was directed only at the rate design and not at the rate increase.

Laclede also prefiled direct testimony and exhibits. Laclede presented testimony as to the reasonableness of the then current rate design and recommended that it should be maintained with the additional revenue proposed to be allocated among every class of customer on the basis of uniform percentage of increase. The Industrials claimed that they were being charged rates substantially in excess of the cost of distribution to them as compared to other customer classes and, therefore, the rate design was inappropriate.

A prehearing conference was held on August 22, 1983. A Stipulation and Agreement was issued and subscribed by all the parties to the proceedings except the Industrials. The nonunanimous Stipulation and Agreement proposed that the PSC authorize Laclede to file tariffs designed to increase revenues by $17,800,000 allocated among all its rate schedules on a uniform percentage of total revenue basis. The Stipulation and Agreement also proposed that the PSC commence a hearing on the rate design issue.

The hearing was held and the principals presented their full cases on the rate design issue. The PSC issued a decision accepting and adopting the Stipulation and Agreement on the issues. The PSC rejected the cost of service study prepared by the Industrials as the basis for rate design and cost allocation. The Industrials were denied a rehearing or reconsideration of the decision. Industrials filed a Petition for Review in the Circuit Court.

While the rate design decision was pending for judicial review in the Circuit Court, Laclede filed tariffs with the PSC designed to increase revenues by another $14,200,-000. The issues of this rate case, No. GR–84–161, were ordered by the PSC on September 21, 1984, according to the terms of a unanimous Stipulation and Agreement of all the principals, Industrials included. The issue of rate design under review from the prior case, No. GR–83–233, was a component of rate case No. GR–84–161, and was included in the unanimous Stipulation and Agreement.

The Circuit Court reviewed Case No. GR–83–233 during pendency of Case No. GR–84–161 and held that the PSC's adoption of the nonunanimous Stipulation and Agreement in Case No. GR–83–233 unreasonably limited the hearing, contrary to State ex rel. *Fischer v. Public Service Commission,* 645 S.W.2d 39 (Mo.App.1982) *cert. denied,* 464 U.S. 819, 104 S.Ct. 81, 78 L.Ed.2d 91 (1983), and was in violation of due process. The court determined that the rate design was unlawful and unreasonable and not supported by the evidence. The court reversed and remanded for a rehearing of issues respecting the rate design. The court also stayed as to the Industrials the rates approved by the order on condition that the Industrials pay into the court's registry each month the amount of the difference between the rates charged the Industrials prior to the order and the rates charged the Industrials under the new, but suspended, tariffs.

The Court of Appeals reversed and remanded the judgment of the circuit court with directions to dismiss the writ of review in Case No. GR–83–233, to dissolve the order to stay the rates as to the Industrials and to disburse to Laclede the money impounded into the registry of the Circuit Court, and to remand the case to the PSC for reinstatement of decision. The cause was then transferred to this Court under authority of Mo. Const. art. V, § 10.

THE ISSUE OF MOOTNESS

■ The Court of Appeals held that the Industrials' Stipulation and Agreement to the 1984 rate case, GR–84–161, rendered moot the reasonableness and lawfulness issues of the 1983 rate design approved in rate case GR–83–233. The court found that the issue of rate design under review was a component of rate case GR–84–161 and was "concluded by the *unanimous* consensus of all the signatories to the [1984] Stipulation and Agreement," Industrials included. The court held that the order entered in case GR–84–161 "not only consummate[d] the rate design issue contested among the principals in the prior decision under review, but also perpetu-

ate[d] the rate design, and that *on the unanimous consensus of the principals— the Industrials included."* The court stated that as such, the Industrials relinquished controversy with the rate design adopted in GR–83–233 and now acquiesce, by concurring in the 1984 Stipulation and Agreement, that it was, when subsistent, reasonable and lawful. The Court of Appeals concluded that under these circumstances, the reasonableness and lawfulness of the rate design approved by the PSC in Case No. GR–82–233 and challenged by the Industrials had become moot.

The court also concluded that the PSC determination of the rate design issue in the 1984 order took force under § 386.370, RSMo 1978, and as such, superseded the rate design order entered in the case under review. The court stated that the rate of revenue, which became final without contest, vested as a property right in Laclede and that the rate design, although contested, was superseded when the subsequent rate design order went into effect without contest. The court reasoned that with an approved and unchallenged rate design in effect, there would be no way for Laclede to recoup any revenue, now vested as a property right, if distributed to the Industrials because of an erroneous rate design. The court concluded, "Any error the order in Case No. GR–83–233 made against the Industrials is simply no longer subject to redress."

A case on appeal becomes moot when circumstances change so as to alter the position of the parties or subject matter so that the controversy ceases and a decision can grant no relief. *Fugel v. Becker*, 2 S.W.2d 743, 746 (Mo. banc 1928); *Grogan v. Hays*, 639 S.W.2d 875, 877 (Mo.App. 1982). The court of appeals may take notice of facts outside the record in determining mootness, as did the court in the present case. *State ex rel. Donnell v. Searcy*, 347 Mo. 1052, 152 S.W.2d 8, 10 (Mo. banc 1941).

The Court of Appeals appears to have based its holding on two separate and distinct points. First, that since the Industri-

als joined in the unanimous Stipulation and Agreement in 1984, which included the same rate design, they thereby acquiesced that the challenged rate design was reasonable and lawful. Second, since the rate of revenue had vested as a property right in Laclede, and since the rate design in the 1984 order was uncontested, no relief could be granted to the Industrials because Laclede was entitled to the revenue provided in the 1983 order, and the difference could not be recouped from other customers. According to the Court of Appeals, each of these points standing alone could have rendered the case moot.

Although the Industrials agreed to the rate design in the 1984 order, this does not necessarily mean that they acquiesce to a similar rate design from the previous year. In fact, the Industrials expressly stated the opposite in paragraph 5 of the 1984 Stipulation in Case No. GR–84–161, which states:

[N]othing in this Stipulation and Agreement shall have any probative or precedential value therein, nor in any way impair or prejudice the positions of any of the respective parties, in the Pending Appeal, relative to the issues to be resolved therein with respect to Commission Case No. GR–83–233 * * *.

Nothing in this stipulation and Agreement shall in any way affect the disposition of funds as have heretofore been paid into the registry of the Circuit Court of Cole County pursuant to a stay of certain rates in Commission Case No. GR–83–233 as ordered by Judge Byron L. Kinder on May 17, 1984 in connection with the Pending Appeal of Case No. GR–83–233 (hereinafter referred to as the "Funds"), and such Funds shall continue to be maintained in the court registry (and interest shall continue to accrue thereon) until such time as the court shall order the withdrawal of the Funds.

Furthermore, in paragraph 10 the parties stated:

This Stipulation and Agreement represents a negotiated dollar settlement which, if approved by the Commission, disposes of and resolves all of the issues

in Case No. GR–84–161 * * * but none of the parties to this Stipulation and Agreement shall be prejudiced, bound by, or in any way affected by, the terms of this Stipulation and Agreement * * * (b) regarding the issues raised in the Pending Appeal with respect to Commission Case No. GR–83–233 * * *.

The Industrials made it clear that they in no way acquiesced to the rate design in Case No. GR–83–233 by signing the Stipulation and Agreement in the subsequent case. There may have been other reasons for the Industrials to agree to the same rate design the following year. Conditions may have changed so that in the following year the same rate design may have been reasonable. The Court of Appeals recognized this very point in a later part of its analysis in which it stated, "[A] rate design reasonable under a given complex of information may become discriminatory as the circumstances change." Whatever the merit of this argument, reasonableness of the rate design is for the PSC's determination in a full hearing and not for the Court of Appeals to determine by comparison to the following year's rate design.

For the proposition that no relief could be granted because Laclede is entitled to the revenue as a property right, the Court of Appeals relied on *Lightfoot v. City of Springfield*, 361 Mo. 659, 236 S.W.2d 348 (Mo.1951). *Lightfoot*, however, is distinguishable from the present case. *Lightfoot* presented a situation in which a municipal utility challenged an order of the Federal Power Commission ("FPC") as to the revenue the utility paid to a gas company from which it purchased natural gas. While an appeal was pending, the utility paid money, out of its own funds, into a stay fund. The customers of the utility sought to participate in the proceeds of the stay fund. The utility, however, was regulated by the Missouri PSC and its rates were set by the PSC. These customers did not contest the PSC order setting their rate nor did they establish a stay fund. The court denied the customers' claim, holding that they were not entitled to the funds because their payments to the utility were not conditioned upon any challenge to the rate they paid. The court stated, "No ultimate consumer had ever made a request or a demand that any of the money collected by the utility from its customers * * * in accordance with rate schedules in force and effect as approved by the Public Service Commission * * * should be ordered set apart, segregated or impounded to await the event of the decision upon the review of the Federal Power Commission's order." The court concluded that "money so unconditionally paid as prescribed by the lawfully promulgated and effective rates became and was the property of the distributors." 236 S.W.2d at 353–54.

*Lightfoot* does not control the present case because the Industrials did contest the PSC order and they did establish a stay fund. Their money was not unconditionally paid and therefore it did not become the property of Laclede. Under this interpretation, relief can be granted by virtue of the stay entered and the suspending bond established by the circuit court pursuant to § 386.520. This relief would be for the amount paid for the rate increase under the GR–83–233 tariffs from the time the tariffs were found unlawful in the circuit court until the new tariffs became effective. Since Laclede was not vested with a property right, Laclede has no right to recoup the difference from other customers.

In our view, the case is not moot. Agreeing to the rate design in 1984 does not mean that the Industrials acquiesce to the reasonableness and lawfulness of the same rate design in 1983. The Industrials expressly reserved this issue for review in their 1984 Stipulation and Agreement. The Circuit Court reviewed the evidence and held that the rate design in 1983 was unlawful and unreasonable. Nor does Laclede have a property right to the impounded funds.

## THE ISSUE OF LAWFULNESS AND REASONABLENESS OF THE ORDER

■ The Industrials claim that the PSC did not make appropriate and complete findings of fact as required by § 386.420,

RSMo 1978; State ex rel. *Rice v. Public Service Commission*, 359 Mo. 109, 220 S.W.2d 61 (1949); and *State ex rel. Fischer v. Public Service Commission*, 645 S.W.2d 39 (Mo.App.1982) *cert. denied* 464 U.S. 819, 104 S.Ct. 81, 78 L.Ed.2d 91 (1983). We agree and borrow freely from the opinion filed by Judge Dixon in the Court Appeals.

Section 386.420 as interpreted by this Court in *Rice* and followed in *Fischer* requires the PSC to make a written report stating the conclusions of the Commission along with its decisions, orders, and requirements. The Commission must include findings of fact in its written report. 220 S.W.2d at 65; 645 S.W.2d at 42. Findings of fact that are completely conclusory, providing no insights into how controlling issues were resolved are inadequate. 645 S.W.2d at 42.

Laclede filed the tariffs here in question using the existing rate design. In the suspension order and notice of proceedings dated January 18, 1983, the Commission noted that the Company bore the burden of proof before the Commission and ordered the Company "to provide evidence and argument sufficient for the Commission to determine * * * the reasonableness of the Company's rate design." The Report and Order filed, which is for review in this case, contains the following conclusion:

> Because of all of the *foregoing infirmities* in the Industrial Intervenors' cost study, the *Commission finds it to be inappropriate* as the foundation of the allocation of the revenue increases herein involved. It is more appropriate to continue the present rate design by adopting the uniform percentage increase proposed by the other parties, and to await any major revisions under the filing of the Company's cost of service study as agreed by all parties.

The only language in that order referring to rate design *evidence* presented in *support* of the foregoing conclusion is as follows:

> The stipulating parties *recommend* the continuance of Laclede's basic rate design established in a rate design proceed-

ing, Commission Case No. GO–78–38. That case involved the filing of numerous cost of service studies but was resolved by agreement of all parties except the Public Counsel, including the Industrial Intervenors. In subsequent rate cases rate design has been resolved by agreement which tended to maintain a status quo of the basic rate design approved in Case No. GO–78–38.

> The stipulating parties in this case *generally recommend* that *there should be no departure from the present rate design* on the basis of only one embedded cost allocation study. The stipulating parties also contend that the Industrial Intervenors' cost of service study is rendered inaccurate by the inclusion of too many biases and procedural errors.

There follows in the report and order extensive criticism of the evidence offered by Industrial Intervenors but nothing that could be said to be a finding of fact in *support* of the conclusion.

The Circuit Court in its conclusions of law found that:

1. The Commission erred by not making appropriate and complete findings of fact in its Order. Decisions of the Commission must be supported by appropriate findings of fact. Section 386.420 R.S.Mo. 1978; *State ex rel. Rice v. Public Service Commission*, 220 S.W.2d 61, 65 (Mo. 1949); *State ex rel. Fischer v. Public Service Commission*, 645 S.W.2d 39, 42–43 (Mo.App.1982). Conclusory statements by the Commission are not appropriate findings of fact. In *Fischer*, 645 S.W.2d at 42, the Court held:

> The order entered by the Commission in this case does not meet the statutory findings of fact requirement. The findings * * * are completely conclusory, and provide no insights into if and how controlling issues were resolved.

2. The Commission must make findings of fact in support of its determinations, even when the Commission is adopting the proposals set forth in a non-unanimous Stipulation. The Commission may not simply adopt the Stipulation. *State*

*ex rel. Fischer v. Public Service Commission,* 645 S.W.2d at 43.

3. The Commission adopted the rate design proposed in the non-unanimous Stipulation which allocated the rate increase on an equal percentage of each customer class's contribution to Laclede's total revenue, including revenue received for the cost of purchased gas. Nowhere in the Report and Order does the Commission make any findings of fact as to why this method would be the appropriate method for allocating the increase. See *Fischer,* 645 S.W.2d at 42–43.

4. Under Missouri law, the Commission cannot substitute criticism of a party's evidence for findings of fact in support of its decision. * * * *State ex rel. Fee Fee Trunk Sewer, Inc. v. Public Service Commission,* 550 S.W.2d 945, 946 (Mo. App.1976). [F]rom the holding in *Fee Fee,* the Commission's criticisms of Relators' cost evidence did not satisfy the finding of fact requirement.

We agree with those findings and conclusions of the trial court. We recognize that we review the Commission's report and order, but it is also the function of the Circuit Court to review the Commission's order. The Circuit Court has in this instance made a careful and correct analysis of the issue. We adopt it as the rationale of this Court to reverse the order of the Commission. In our view, it is unnecessary to reach any other issue in the determination of this appeal.

The Public Service Commission, which undertook to brief the issue of the failure of the order to make findings of fact, concedes that § 386.420(2), RSMo 1978 (formerly § 5688, RSMo 1939), as construed in *State ex rel. Rice v. Public Service Commission,* 359 Mo. 109, 116, 220 S.W.2d 61, 65 (banc 1949), requires such findings of fact. They do not contend that the failure of the order to make necessary findings is not a basis for reversal. Nor is such a position sound. The Public Service Commission is a creature of statute and can function only in accordance with the statutes. Where a procedure before the Commission is prescribed by statute, that procedure must be followed. *State ex rel. Laclede Gas Co. v. Public Service Commission* 535 S.W.2d 561, 568 (Mo.App.1976). No deference is accorded the order of the Commission on the issue of lawfulness of the order. *State ex rel. Laclede Gas Co. v. Public Service Commission,* 600 S.W.2d 222, 226 (Mo.App.1980), *appeal dismissed sub nom. Laclede Gas Co. v. Public Service Commission,* 449 U.S. 1072, 101 S.Ct. 848, 66 L.Ed.2d 795 (1981). The question of lawfulness turns on whether or not the Commission had statutory authority to act as it did. *State ex rel. Fischer v. Public Service Commission,* 645 S.W.2d 39, 42 (Mo.App.1982), *cert. denied,* 464 U.S. 819, 104 S.Ct. 81, 78 L.Ed.2d 91 (1983). The lack of findings renders the report and order violative of the statute and unlawful.

The scope of review open to this Court under § 386.510, RSMo 1978 is limited. In *State ex rel. Fee Fee Trunk Sewer, Inc. v. Public Service Commission,* 522 S.W.2d 67, 72 (Mo.App.1975), the court pointed out that the only actions permitted to the reviewing court under that statute are those to determine whether the order under review is reasonable and lawful. If it is reasonable and lawful, it must be affirmed. If the court finds that the order is either unreasonable or unlawful, it must be reversed and the court may remand the cause to the Commission for any further action the Commission shall elect. The *Fee Fee* court explicitly stated that "the court oversteps the boundaries of its jurisdiction when it attempts to tell the commission what the action should be." *Id.*

The order is unlawful and should be reversed. The funds held by the court cannot be paid to Laclede under an unlawful order and should be returned to the Industrial Intervenors. The judgment of the Circuit Court is affirmed.

HIGGINS, C.J., and BILLINGS and WELLIVER, JJ., concur.

BLACKMAR, J., dissents in separate opinion filed.

ROBERTSON and RENDLEN, JJ., dissent and concur in separate dissenting opinion of BLACKMAR, J.

BLACKMAR, Judge, dissenting.

I agree that the matters properly preserved for review were not rendered moot by subsequent rate proceedings. I believe, however, that the decision of the Public Service Commission was properly entered and within its authority, and so would reverse the judgment of the circuit court and remand with directions to sustain that order.

In 1980 the Public Service Commission approved a "rate design" showing how the charges for the sale and distribution of its product were to be allocated among various classes of customers. The "industrial users," who are the parties challenging the Commission's 1983 order and are respondents here, participated in the proceedings and consented to the rate design.[1] In two subsequent rate proceedings these customers made no protest of uniform rate increases based on the existing rate design.[2] It is reasonable to hold that the rate design so approved and perpetuated has presumptive validity.

The rate design distinguishes between large and small volume customers. For small volume customers there is a monthly customer charge, higher during the winter months, a per therm[3] charge for the first 65 therms consumed in any month and a lower per therm charge for the excess. There is some variation among customers in different geographic areas. For large volume service there is a monthly customer charge, much higher than for residential users, a per therm "demand charge," which is paid whether or not the full quantity

paid for is used, and a "commodity charge" per therm which is substantially lower than the commodity charge to residential customers. Volume purchasers may also contract for "interruptible service" in which no demand charge is assessed. The profit factor from gas supplied to the several classes of customers is not readily apparent from examination of the rate design, but rather requires analysis.

The present proceeding began with Laclede's claim that it was entitled to a rate increase because of increased costs of distribution.[4] No party seriously challenged its claim that it was entitled to more money. The only protest came from the industrial users, who argued that a new rate design was in order because, under the existing rate design, the rates charged them were disproportionate to the cost of servicing them, so that they were effectively subsidizing other customers.

The Public Service Commission heard their evidence and decided that it had internal flaws, by reason of which it was not persuasive of a need to change the rate design. One problem is that it was based on a study of costs during the year 1976. It was also based on a limited sample. The Commission was not obliged to accept this evidence, even though no other cost studies were presented in the proceeding then pending. The Commission has the same prerogative that any trier of the fact has. *State ex rel. Rice v. Public Service Commission*, 359 Mo. 109, 220 S.W.2d 61 (1949). It set forth its reasons for rejecting the industrial users' evidence, in great detail.

The groundwork for the existing rate design had already been laid in prior proceedings. In a long-range matter such as rate design, the Commission was justified

1. Commission Case No. GO 78–38 involved the filing of numerous cost of service studies, was the product of years of prolonged work by the parties, including the Industrial Intervenor's, and was resolved by stipulation of all the parties, except Public Counsel.

2. Commission Case No. GR–82–158; Case No. GR–82–200.

3. A therm is a unit of the quantity of heat; one therm is the equivalent of 100,000 British ther-

mal units or 100 cubic feet of gas. Webster's New Third International Dictionary (3d ed. 1981).

4. Increases in the cost of gas supplied to Laclede by its wholesale distributor are automatically passed on to Laclede's customers through a procedure approved by the Public Service Commission.

in imposing on the industrial users the burden of demonstrating that a change should be made. It could make use of all of the data and studies supporting the existing rate design and could properly order a uniform increase in rates, based on the existing rate design, in order to compensate Laclede for its increased costs of distribution.

The procedural arguments in opposition to the Commission's order are not substantial. Complaint is made that the Commission adopted a nonunanimous stipulation, citing *State ex rel. Fischer v. Public Service Commission*, 645 S.W.2d 39 (Mo.App. 1982), *cert. denied* 464 U.S. 819, 104 S.Ct. 81, 78 L.Ed.2d 91 (1983). The point is not well taken. The Commission was careful to avoid the problems in *Fischer*, in which there was a non-unanimous stipulation and a limited hearing. The Commission accepted the stipulation as representing the positions of the parties agreeing to it, and afforded the industrial users a full hearing with opportunity to offer all the evidence they desired on the points they placed in issue. Having done this, it was perfectly entitled to express its agreement with the stipulating parties and to make use of the stipulation in framing its findings and conclusions. The practice is similar to that of a circuit judge, who may invite all parties to submit requested findings and conclusions, and may then adopt and enter those which he considers to be supported by the record.

Nor is the Commission's decision infirm because of inadequacy in its findings and conclusions.[5] The findings respond to the issue presented by the industrial users, that is, whether the existing rate design

was faulty. There was no need to repeat the rationale of the prior proceedings in which the rate design was established. The only required affirmative finding is that the increased costs of distribution make it necessary for the utility to have more money. *State ex rel. Fee Fee Trunk Sewer, Inc. v. Public Service Commission*, 550 S.W.2d 945 (Mo.App.1977) is not in point because the findings here as to the existing rate design and the increased need, though brief, are dispositive. *Fee Fee* lacked the starting point of a prior rate design proceeding and held that the Commission had a duty to go forward to show what rates were proper on the basis of admitted increases in cost, even though it was not satisfied with the applicant's evidence and conclusions. Here, the criticism of the industrial users' evidence responds to their request for change.

The circuit court was wrong in holding that "the Commission erred in allocating the rate increase in proportion to revenues which included purchased gas revenues." Inasmuch as the existing rate design was presumably correct, it was entirely proper to allow for increased cost of distribution by approving the uniform percentage increases to the established rates.

The circuit court also went wrong in holding that the Commission's order lacked evidentiary support. It matters not that the only evidence in the record as to the propriety of the rate design was that of the industrial users. They had the burden of showing that the existing rate design was inappropriate and, if they fail to do so, the Commission is justified in denying the relief sought. It does not have to replow the

---

5. In its Report and Order, the Commission provided specific findings to support its conclusions 1) that the Industrial Intervenor's cost of service study, due to its flaws and deficiencies should be rejected; 2) that, with the agreement of all parties, on or before May 15, 1984, the company would institute a proceeding concerning the appropriateness of its overall rate design; and 3) that, because it was based on the contribution of cost of service studies by all factions of Laclede's ratepayers, it was more reasonable to maintain the present rate design

than to adopt the discredited cost of service study tendered by a single body of ratepayers.

The Commission's findings leave no doubt as to "what part of the evidence it will believe and find to be true and what part it will reject," and thus meet the standard required for findings of fact for administrative agencies. *Century State Bank v. State Banking Board of Missouri*, 523 S.W.2d 856, 859 (Mo.App.1975); *State ex rel. Fischer v. Public Service Commission*, 645 S.W.2d 39, 42 (Mo.App.1982), *cert. denied* 464 U.S. 819, 104 S.Ct. 81, 78 L.Ed.2d 91 (1983).

ground of the earlier rate design proceedings.

No error is shown in the Commission's evidentiary rulings. The Commission has wide discretion as to its own procedures. It could properly call on the parties to prefile their testimony, and could maintain the integrity of its ruling by excluding direct testimony which was not prefiled. It could also reject exhibits belatedly offered, on the ground that the other parties did not have the chance to inspect and to respond to them. It had no duty to reopen the record. It is important to move rate cases promptly, and the Commission may insist on strict scheduling.

The Commission has demonstrated its adherence to its duty by directing reconsideration of the rate design, and directing the utility to provide revised cost studies. Rate making and rate design are continuing processes. Flaws may not be capable of immediate adjustment; correction may be a continuing process. The Commission is better equipped than courts are to determine the suitability of technical studies and to direct studies on its own. The principal opinion countenances a serious interference with the Commission's proceedings by sanctioning a premature alteration of the rate design.

The principal opinion also errs in directing return of the funds paid pursuant to the stay order. It remands the case to the Public Service Commission to correct the perceived inadequacies in evidence and findings. The Commission's revised order may hold that Laclede is entitled to all or part of the impounded funds. It is more practical, and neither illegal nor inequitable, to provide for the retention of these funds pending final adjudication. The funds are earning interest, which will inure to the benefit of the parties ultimately found to be entitled.

The judgment of the circuit court should be reversed and the case remanded with directions to enter an order sustaining the decision of the Commission.