**STATE of Missouri EX REL., CITY
OF JOPLIN, Missouri,
Appellant,**

v.

**PUBLIC SERVICE COMMISSION OF
the STATE OF MISSOURI; Missouri
American Water Company; AG Pro-
cessing, Inc., Respondents.**

**No. WD 64944.**

Missouri Court of Appeals,
Western District.

Dec. 6, 2005.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Jan. 31, 2006.

Application for Transfer Denied
April 11, 2006.

James B. Deutsch, Marc H. Ellinger, Co-Counsel, Jefferson City, MO, for appellant.

Keith R. Krueger, Jefferson City, MO, for respondent Public Service Commission.

Dean L. Cooper, Jefferson City, MO, for respondent Missouri American Water.

Stuart W. Conrad, Kansas City, MO, for respondent AG Processing.

Before VICTOR C. HOWARD, P.J., JAMES M. SMART and THOMAS H. NEWTON, JJ.

THOMAS H. NEWTON, Judge.

The City of Joplin appeals a circuit court decision affirming the Public Service Commission's (Commission) ruling that a 2000 rate case involving the Missouri–American Water Company (Company) was mooted by new tariffs that Joplin agreed to and were approved by the Commission in 2004 while this case was pending. Because we find that the case fits within an exception to the mootness doctrine, we reverse and remand for the Commission to issue findings of fact and conclusions of law as ordered by the circuit court in 2001.

In August 2000 the Commission approved a Company rate plan that was designed to move from single tariff pricing (STP) toward district-specific pricing (DSP) across a number of Missouri districts. The Company was seeking to in- crease its annual revenues by 53.97%, or about $16.5 million, and improve its return on equity. The Company had previously been moving toward the STP method, where each district's customers pay for water service at the same rate schedule as customers in other districts, regardless of differences in the actual costs to provide that service to the various districts. DSP, in contrast, is a rate-allocation method under which different rate schedules are applied to customers in each of the various districts in a system served by a public utility and are based on the separately determined, specific costs of providing service in each district.

Under the tariffs approved by the Commission, the Joplin district and its ratepayers were to be charged under a "modified" DSP method that resulted in Joplin district ratepayers paying rates at existing levels under the STP method. Among other matters, the Commission's decision produced an acknowledged excess of revenue over actual costs of providing water service to the Joplin district. The surplus of some $880,000 per year from the Joplin district was purportedly applied to benefit ratepayers in other districts who were only charged for the actual costs of service and would otherwise have faced significant rate increases, characterized as shock rates, under the DSP method.[1] The Commission denied multiple applications for rehearing, including Joplin's.

Seven parties filed ten petitions for writs of review in three different counties, and, on May 31, 2001, the Missouri Supreme Court granted writs of prohibition to stop the proceedings in any county other than Cole. On October 3, the Cole County Circuit Court entered amended judgments on three writs of review, affirming in part the Commission's Report and Or-

---

1. Two dissenting commissioners opined that the rates approved were either not sufficiently compensatory for the Company or did not provide a fair or reasonable return on equity.

der and reversing the Commission's decision as to the Joplin rates. Specifically, the court stated:

[T]he Commission has identified no "principle" to support this decision not to set the Joplin District rates through the same method as the rest of the Company's Missouri system.[2] While the result is undisputed that the Joplin District pays $880,000 in excess of its cost of service in order to subsidize the other water districts, there is no factual or legal explanation for this unequal treatment of the Joplin District in the Commission's Order. The Commission cited no source for such principle in its briefs to this Court. Such a result, without explanation, violates the prohibition against granting undue or unreasonable preference to some rate payers and locales and against subjecting any ratepayers or locale to any undue or unreasonable prejudice or disadvantage in any respect whatsoever, Section 393.130.3, RSMo 2000.

. . . .

. . . [T]he Commission's conscious decision to treat differently the ratepayers in the Joplin District from those outside that district by requiring those customers to pay part of the cost of serving all other customers outside the Joplin District clearly requires justification in the evidence and in the decision. Because the [Commission's] decision states no such justification, and because [the Commission] cites no such evidence in the record, the Commission decision is unauthorized by law.

. . . .

The Commission is required by law to set forth specific findings of fact to permit effective judicial review by the reviewing Court in order to determine whether the Commission's decision was supported by substantial and competent evidence. Section 536.090, RSMo 2000. The lack of findings of fact and conclusions of law concerning the Joplin District rate design precludes any meaningful review of the Commission's decision by this Court.

The case was remanded for the Commission to set forth specific findings of fact and conclusions of law. With no change in the rates charged to Joplin district ratepayers, Joplin did not seek a stay of the 2000 rates nor did it request the establishment of a stay fund in which the district's ratepayers could have revenues impounded to await further Commission review or a final appellate court decision. § 386.520.[3]

Appeals were taken from the circuit court's decision, and this court dismissed the appeals on December 13, 2001, finding that the court's order was not final and thus not appealable. Our mandate was sent to the circuit court on February 28, 2002. This was the first date on which the Commission regained jurisdiction over the matter. Just five weeks later on April 3, before a pre-hearing conference could be held, several parties other than Joplin successfully filed a petition for writ of prohibition in circuit court seeking to disqualify the regulatory law judge who had been presiding in the case from conducting any further hearings. This court dissolved the writ a year later on April 1, 2003. *State ex rel. AG Processing Inc. v. Thompson*, 100 S.W.3d 915 (Mo.App. W.D.2003). Jurisdic-

---

**2.** The circuit court is not entirely accurate in making this statement. In fact, the Commission states in its Report and Order, "In moving toward DSP, however, the Commission will adhere to the principle that no district will receive a rate decrease."

**3.** All statutory references are to RSMo (2000), unless otherwise indicated.

tion of the case was returned to the Commission thereafter on May 12. One week later, on May 19, the Company filed a second rate case, seeking a general 12.2% rate increase for water and sewer service that would produce some $20 million in additional gross annual water revenues excluding gross receipts and sales taxes.

The Commission took no further action on the 2000 rate case until after it approved a stipulation and agreement reached by the Company and most of the intervenors, including Joplin, as to the second rate case in April 2004. The second rate case had been consolidated with an excessive earnings complaint; Commission staff alleged that the Company was earning excessive water service revenues amounting to between $19 million and $21 million per year on a total company basis. The final rates approved were intended to be revenue neutral and included a 10% reduction for residential ratepayers in the Joplin district and a 1.38% increase for the district's commercial ratepayers.[4] The Joplin rates were intended "to more accurately reflect the true cost of providing water service to these customer classes." The stipulation also included boilerplate text that limited application of the agreement as follows:

This Stipulation and Agreement is being entered into solely for the purpose of settling all Revenue Requirement issues in these cases. None of the signatories to this Stipulation and Agreement shall be deemed to have approved or acquiesced in any ratemaking or procedural principle, including, without limitation, any method of cost determination or cost allocation or revenue related methodology, and none of the signatories

shall be prejudiced or bound in any manner by the terms of this Stipulation and Agreement in this or any other proceeding, whether this Stipulation and Agreement is approved or not, except as otherwise expressly specified herein.

Joplin did not file an application for rehearing regarding the 2003 rate case.

As for the 2000 rate case at issue herein, the Commission's Report and Order on Remand, issued on May 27, 2004, found that (i) the 2000 rates, which became effective September 20, 2000, were superseded by the rates approved in 2004; (ii) neither the Commission nor any court stayed the 2000 rates; (iii) the revenues produced by those rates were paid by the Company's customers directly to the Company; and (iv) none of the revenues were paid into the registry of any court. The Commission concluded, on the basis of these findings, that the Joplin district rate issue in the case was moot, because there was no decision the Commission could make that would have any practical effect on the controversy. According to the Commission,

In the present case, the excess revenue produced by the Joplin District was paid directly to [the Company], unconditionally, pursuant to tariffs approved by the Commission. This revenue became the property of [the Company] and no part of it can lawfully be refunded or returned to the ratepayers. Neither the Commission nor any court can retroactively determine what a just and reasonable rate for Joplin should have been. Therefore, the Commission determines that the Joplin issue is moot.

Thus, the Commission did not, as ordered by the circuit court in 2001, issue

---

4. Rates were also adjusted as to ratepayers in other districts, and the Company made a number of other concessions that apparently resolved the excessive earnings allegation.

By stipulation, the parties agreed that if the Commission approved the agreement, "there will be no need for a true-up audit and hearing."

findings of fact and conclusions of law to support the 2000 tariffs, which had been found discriminatory and unlawful. The Commission denied Joplin's application for rehearing, and the circuit court, also finding the matter moot, upheld its decision in November 2004.

On appeal, Joplin claims that the Commission erred in finding the rate issue moot. According to Joplin, the application of discriminatory rates to ratepayers in the district is a live controversy because it is not seeking a refund,[5] the issue was timely raised in the original case, the Commission did not properly issue findings in support of its decision, and the stipulation in the 2003 rate case exempted application of that case to any other case or proceeding. Joplin also argues that the Commission's declaration that the rate case was moot denied Joplin its constitutional right to judicial review and blames the Commission for contriving to delay any ruling on the merits of the original rates.[6]

■■■ We review a Commission order to determine whether it is lawful and reasonable. § 386.510; *State ex rel. AG Processing, Inc. v. Pub. Serv. Comm'n*, 120 S.W.3d 732, 734 (Mo. banc 2003). The lawfulness of a Commission order "is determined by whether statutory authority for its issuance exists, and all legal issues are reviewed *de novo*." *Id.* Only if we find a Commission order to be lawful, do we consider whether it is reasonable, a determination that requires us to consider the evidence in the case. *State ex rel. Alma Tel. Co. v. Pub. Serv. Comm'n*, 40 S.W.3d 381, 388 (Mo.App. W.D.2001).

■■■ When tariffs are superseded by subsequent tariffs that are filed and approved, the "superseded tariffs are generally considered moot and therefore not subject to consideration." *State ex rel. Mo. Pub. Serv. Comm'n v. Fraas*, 627 S.W.2d 882, 885 (Mo.App. W.D.1981). This is so because superseded tariffs cannot be corrected retroactively, *id.*, and if funds paid under those Commission-approved tariffs are not segregated in a court registry pending the final outcome, there is no monetary relief that can be given to the party challenging the rates. *Lightfoot v. City of Springfield*, 361 Mo. 659, 236 S.W.2d 348, 353–54 (1951).

■■■ There is an exception to this general rule, however, and we may exercise our discretionary jurisdiction where "an issue is presented of a recurring nature, is of general public interest and importance, and will evade appellate review." *Fraas*, 627 S.W.2d at 885. In essence, we will exercise this discretionary jurisdiction if "there is some legal principle at stake not previously ruled as to which a judicial declaration can and should be made for future guidance." *Id.* As discussed more fully *infra* we find that the mootness exception applies because a declaration that the 2000 rates were unlawful offers the only possibility for Joplin ratepayers to be made whole.

■■■ The circuit court made an initial finding that the rates were unlawful, but instead of reversing on that basis and giving the Commission the opportunity to re-

---

5. Presumably, Joplin emphasizes that it is not seeking a refund at this point in the litigation because there is no segregated fund over which the courts can lawfully exercise jurisdiction in this proceeding. *Straube v. Bowling Green Gas Co.*, 360 Mo. 132, 227 S.W.2d 666, 671 (1950) (money legally collected from ratepayers under established rate schedules

becomes utility's property of which it cannot be deprived without violating due process).

6. Because we have determined that this case fits within an exception to the mootness doctrine, we will not address Joplin's second point on appeal.

structure the rates, the court returned the case for the Commission to explain its action by issuing additional findings of fact and conclusions of law. The remand made the case unreviewable by this court, but it is now properly before us after the Commission's and circuit court's mootness determinations. There are several reasons why we believe that the case is not moot, notwithstanding the fact that the 2000 rates have been superseded and there is no stay fund from which Joplin ratepayers can secure monetary relief. It is not unusual in public-utility rate cases for new tariffs to overtake proceedings involving old tariffs, and the 2001 remand here, along with the unrelated proceedings that delayed Commission action pertaining to the remand, ensured that this would occur. Where, as here, a stay may not be available or practical, the issue will evade appellate review.

■ We may also exercise our jurisdiction where the question involved arises from existing facts or rights, and we are not called on to determine an abstract question. *State ex rel. Brokaw v. Bd. of Educ. of City of St. Louis,* 171 S.W.2d 75, 85 (Mo.App.1943). Arguably, the overpayment of more than $3.5 million by Joplin district ratepayers on the basis of a Commission order that was alleged to be unlawful involves more than an abstract question.

■ Under section 393.130.3, water corporations are forbidden from granting undue preference or advantage to any ratepayer, just as they may not unduly or unreasonably prejudice or disadvantage any ratepayer in the provision of services. Hence, the Commission lacks statutory authority to approve discriminatory rates, and its approval of the rates herein, required Joplin ratepayers to pay significantly more than the actual cost of service in that district for the express purpose of subsidizing the services provided in other Company districts that were only paying for the actual cost of service arguably exceeded its authority. Had petitions for writs and appeals not been filed in the case, the Commission would have had ample time before the Company filed a new rate plan in 2003 to attempt to justify these discriminatory rates, as ordered by the circuit court, or modify the 2000 rate plan in a way that would not have resulted in the alleged illegal multimillion dollar overpayments by Joplin ratepayers. But that did not happen. Instead, the Commission decided otherwise. It regained jurisdiction by approving the 2003 rate plan and then declared Joplin's challenge to the old plan moot.

By failing to comply with the circuit court's order and by approving new rates before doing so on remand, the Commission has effectively taken from Joplin the opportunity to take any action that might begin to redress the wrong done. That said and as noted above, Joplin failed to seek a stay of the rates when the circuit court concluded in 2001 that the case should be remanded. Perhaps more significantly, Joplin failed to request that the court establish a stay fund in which to segregate the contested payments that could then be ordered returned to the ratepayers, if they ultimately prevailed, without violating the Company's due process rights.

It is not entirely certain, however, that Joplin would have been able to obtain a stay in a rate case that did not result in either a decrease or increase in rates. The legislature has made the issuance of a stay discretionary, and the circuit court may not issue a stay unless there is a finding of great or irreparable damage. § 386.520.1. Given that the rates charged to Joplin ratepayers did not change as a result of the Commission's order, it is un-

likely that the district could have produced sufficient evidence of great or irreparable damage to justify the entry of a stay order. *Id.* There has been considerable judicial attention given to the circumstances under which section 386.520 can be applied. *State ex rel. Midwest Gas User's Ass'n v. Pub. Serv. Comm'n,* 996 S.W.2d 608 (Mo.App. W.D.1999). In that case, we determined that the statute applies to parties "aggrieved by" a Commission decision where it *increases* the rates as well as where it *decreases* the rates, *id.* at 615, but we have been unable to find any case addressing whether a party can obtain a stay where new rates make no changes to existing rates, but rather change the rate design.

■ The Commission argues that the case is moot because there is no effective remedy for Joplin ratepayers in this proceeding. We agree that the Commission lacks authority to retroactively correct rates. *Lightfoot,* 236 S.W.2d at 353. The Commission also argues, and we agree, that it lacks the authority to refund money. *DeMaranville v. Fee Fee Trunk Sewer, Inc.,* 573 S.W.2d 674, 676 (Mo.App. 1978). Nor can the Commission take into account overpayments when fashioning prospective rates. *See State ex rel. Empire Dist. Elec. Co. v. Pub. Serv. Comm'n,* 339 Mo. 1188, 100 S.W.2d 509, 512 (1936) (court rules that commission cannot regulate company's depreciation reserve retroactively; discussing matters that can be considered for purposes of ratemaking, court observes "the law does not require the company to give up for the benefit of future subscribers any part of its accumulations from past operations. Profits of the past cannot be used to sustain confiscatory rates for the future.") Just because there is no effective remedy for Joplin, however, does not mean that we cannot

consider the merits of the appeal under the mootness exception.

The parties refer to the same cases to support their respective positions, and a summary of those decisions will be helpful to our analysis. In *Lightfoot,* ratepayers claimed that they were entitled to a fund set aside by the federal courts and given, in part, to the Board of Public Utilities of the City of Springfield at the conclusion of an unrelated case involving the rates charged to utilities by a natural gas supplier. 236 S.W.2d at 349. The Missouri Supreme Court discusses the legal principle that regulatory authorities may not fix rates retroactively, while noting that they can consider "reduced operation cost and other ever-changing operation costs and the ever-changing rate base" in fixing rates prospectively. *Id.* at 353. Because no "ultimate consumer" had ever challenged the rates or made a request that money collected by the utility be impounded pending a federal regulatory decision, and because the money collected by the utility came into its hands unconditionally "as prescribed by the lawfully promulgated and effective rates," the court ruled that the amount collected was the utility's property and could not be taken without violating due process. *Id.* at 353–54.

The parties also refer to *State ex rel. Monsanto Co. v. Public Service Commission,* 716 S.W.2d 791 (Mo. banc 1986). In that case, industrial utility customers (industrials) opposed the rate design in a 1983 tariff filed by the Laclede Gas Company that was intended to increase revenues. The industrials claimed unsuccessfully before the Commission that they were being charged substantially more than the actual cost to serve them. *Id.* at 791. On review the circuit court ruled that the tariff was unlawful, unreasonable, and not supported by the evidence. *Id.* at 792. The court also found that the Commission

erred by not making appropriate and complete findings of fact in its order. *Id.* at 795. The case was remanded for rehearing because the industrials had not signed the stipulation and agreement regarding the 1983 rates, and the Commission's adoption of the non-unanimous stipulation and agreement unreasonably limited the original hearing in violation of the industrials' due process rights. *Id.* at.792.

The circuit court also stayed the 1983 rates on condition that the industrials pay monthly into a court registry the amount of the difference between the rates charged before the order and the rates charged under the new, but suspended, tariffs. *Id.* The court of appeals reversed on mootness grounds, with the court finding that (i) the industrials had subsequently acquiesced to the challenged rate design by joining a unanimous stipulation and agreement that included the design in Laclede's revised tariffs, which were approved without objection in 1984; and (ii) no relief could be granted to the industrials because Laclede was entitled to the revenue provided in the 1983 order, and the difference could not be recouped from other customers. *Id.* at 793.

The Missouri Supreme Court reversed, determining that the case was not moot. First, the court found that the industrials had, by stipulation, expressly excluded the 1983 rate dispute in agreeing to the 1984 rates and that they could have had a number of reasons for agreeing to the rate design in 1984 but not agreeing to it in 1983. *Id.* at 794. The court found *Lightfoot* inapplicable because, unlike the litigants in that case, the industrials had contested the rate order and did establish a stay fund. *Id.* The court concluded its opinion with an analysis of the lawfulness and reasonableness of the Commission's 1983 order and adopted the circuit court's findings and conclusions. *Id.* at 794–96.

According to the high court, the Commission's failure to make complete findings of fact in violation of the Commission's enabling legislation rendered the Commission's order unlawful. *Id.* at 796. The case was remanded with the recommendation that the funds held by the court be returned to the industrials because "[t]he funds held by the court cannot be paid to Laclede under an unlawful order." *Id.*

Reference is also made to *Fraas,* in which the court articulated the mootness rule in Commission cases and found that some of the issues fit within the rule's exception. 627 S.W.2d at 885. *Fraas,* like the case before us, involved tariffs that had been superseded by subsequently filed tariffs which the Commission had approved. The court discusses why superseded tariffs are generally considered moot, due to the inability of the reviewing court to give any relief. *Id.* There is no indication in the case that a stay had been entered or that an impoundment fund had been established. Nevertheless, the court found that while some claims of Commission error did not fall within the mootness doctrine exception, there were several issues that were not moot. As to these issues, the court issued declarations for future guidance, and the case was not remanded. *Id.* at 892.

In our case, Joplin district ratepayers did not request a stay fund, but the city did challenge the rates on their behalf, and the circuit court, in remanding the case for findings, expressed its view that rates were unlawful. Thus, *Lightfoot* is not controlling herein. In addition, Joplin by stipulation limited its agreement to the 2003 rates and rate design and has not, therefore, acquiesced in its dispute over the 2000 rates. Like the litigants in *Monsanto,* there were reasons why Joplin agreed to the rates in 2003, e.g., residential bills

were reduced by 10%,[7] an additional rate increase would not be sought until after a certain date, more and improved services were promised, and the rate design that Joplin supported was adopted. Unlike *Monsanto*, there is no segregated fund herein. In the absence of any possibility of practical relief, the question that remains is whether the case otherwise fits within the exception to the mootness doctrine.

 Due process prevents any court or legislative body from taking the property of a public utility where that property consists of money collected from ratepayers pursuant to *lawful* rates. *Lightfoot*, 236 S.W.2d at 354; *Straube v. Bowling Green Gas Co.*, 360 Mo. 132, 227 S.W.2d 666, 671 (1950). A Commission order that sets rates is *"prima facie* lawful and reasonable" until finally decided by the courts. § 386.270; *State ex rel. GTE North, Inc. v. Pub. Serv. Comm'n*, 835 S.W.2d 356, 367–68 (Mo.App. W.D.1992). Because the courts still have not finally decided the lawfulness of the rates herein and because there is no stay fund where

contested monies could have remained under the court's jurisdiction, the Company collected money from Joplin district ratepayers under lawful rates, and we too are prevented by due process concerns from ordering a refund in this proceeding.[8]

Under section 393.130.3, no water corporation shall "make or grant any undue or unreasonable preference or advantage to any person, corporation or locality ... or subject any particular person, corporation or locality ... to any undue or unreasonable prejudice or disadvantage in any respect whatsoever." The Missouri Supreme Court has discussed this principle and the policy underlying it at some length in *State ex rel. Laundry, Inc. v. Public Service Commission*, 327 Mo. 93, 34 S.W.2d 37, 44 (1931), noting that our statute demands "reasonable and nondiscriminatory rates." In that case, the court looked to the evidence adduced at the Commission hearing to determine that there was no dissimilarity or difference in the service of supplying water to the water company's manufacturing customers and the complainants, who were engaged in a general laundry business. The high court

---

7. The fact that the Joplin rates were reduced in 2004 is further evidence that the 2000 rates gave an undue advantage to the ratepayers in other districts and, by implication, shows that in this case, the Commission would have been unable to justify the treatment accorded Joplin ratepayers in 2000.

8. Joplin also cites Rhode Island and Utah cases which it claims demonstrate that there are no property rights in an unlawful rate, regardless of whether the utility collected money under that rate without it being impounded. In Rhode Island, a statute gives the regulatory body the authority to order restitution for the relief of unjust, unreasonable or discriminatory acts, and the court allowed the grant of a refund where the utility earned well in excess of its authorized rate of return, while noting that a refund violating due process rights would otherwise be prohibited. *Narragansett Elec. Co. v. Burke*, 505 A.2d 1147, 1148 (R.I.1986). The Utah case in-

volved ratepayers challenging a statute giving utilities the right to not proceed with a previously approved method of rate regulation. *Stewart v. Utah Pub. Serv. Comm'n*, 885 P.2d 759, 774–77 (Utah 1994). The court declared that the general rule against retroactive ratemaking was sound rulemaking policy and did not rest on constitutional principles. *Id.* at 777. Nevertheless, the court acknowledged that utilities only have a constitutional right to retain all earnings not in excess of a reasonable rate of return. *Id.* There is no allegation in this proceeding that the monies paid to the Company were in excess of its authorized rate of return or of what is just and reasonable. In any event, we are bound by Missouri case law which provides that, in the absence of a stay fund, monies collected by utilities under lawful rates cannot be refunded without due process implications. *Lightfoot*, 236 S.W.2d at 354.

affirmed the circuit court judgment that had set aside the Commission order dismissing the laundries' complaints and remanding, not for additional findings and conclusions, but for further action.

We believe, however, that the record that was before the circuit court in this case was not sufficient for it or for us to determine that the rates charged to Joplin district ratepayers under the 2000 tariffs were unlawful.[9] In its 2000 decision, the Commission approved the treatment of the Joplin district ratepayers differently from those outside the district and required the Joplin ratepayers to offset the increased rates that were approved for all other customers. Its stated justification was adherence to a Commission principle that no rates would be decreased in implementing the change from an STP to a DSP rate design in this rate proceeding.

Because the Commission's inadequate findings and conclusions precluded meaningful judicial review, it is necessary for the Commission to issue findings of fact and conclusions of law that will allow the courts to determine whether the rates were unduly prejudicial under section 393.130.3. While it might have been desirable for Joplin to seek a stay of the rates and the establishment of a stay fund when the circuit court ruled that the 2000 rates were unlawful,[10] we do not believe this was a necessary predicate for our consideration of the validity of the Commission's order upholding Joplin's rates. Court challenges to Commission decisions, although given priority over other civil cases under section 386.530, still take a considerable amount of time, particularly where lengthy writ and appeal processes are involved. And it is not uncommon, as here, for new rates to be proposed and approved before final resolution of disputes concerning old rates. Without a ruling by this court, Joplin district ratepayers cannot be protected from future rate discrimination of the same type. If there is future rate discrimination, and Joplin contests it, and the circuit court again remands for justification, the discrimination issue can keep evading review because there will likely be superseding rates before the appeal is concluded. Thus, because there is an issue presented of a recurring nature that is of general public interest and importance and that will evade appellate review unless the court exercises its discretionary jurisdiction, we will apply the exception to the mootness doctrine and decide the case on the merits. *Fraas*, 627 S.W.2d at 885.

We, too, are unable to order the return of any funds to Joplin in this proceeding, because they have not been segregated as provided under section 386.520,[11] but would suggest that, by exercising our discretion under the mootness doctrine exception and remanding the case for further findings and conclusions as to the legitima-

---

9. This court has noted that a reviewing court has no basis for determining the lawfulness of a Commission decision when findings of fact and conclusions of law are absent, *Friendship Vill. of South County v. Pub. Serv. Comm'n of Mo.*, 907 S.W.2d 339, 344 (Mo.App. W.D. 1995), and this principle applies with particular force when the question of an order's lawfulness involves a factual determination. *State ex rel. GTE North, Inc. v. Mo. Pub. Serv. Comm'n*, 835 S.W.2d 356, 374 (Mo.App. W.D. 1992). The question of whether discriminatory rates are unlawful and unjust is usually a question of fact, *State ex rel. Mo. Office of Pub. Counsel v. Mo. Pub. Serv. Comm'n*, 782 S.W.2d 822, 825 (Mo.App. W.D.1990). Accordingly, the inadequacy of the Commission's findings and conclusions precludes meaningful judicial review herein.

10. As noted above, it is not entirely certain that Joplin could have secured a stay given that the rates did not increase.

11. Because the issue has not been presented and briefed, we do not decide whether a stay can issue in a case like this where no rate increase or decrease is at issue.

cy of the 2000 rates, Joplin ratepayers may have an opportunity ultimately to be made whole. *Straube,* 227 S.W.2d at 671 (unjust enrichment does not lie where money paid to public utility was based on *legally* established rate); *see also May Dep't Stores Co. v. Union Elec. Light & Power Co.,* 341 Mo. 299, 107 S.W.2d 41, 58 (1937) (where public utility collects more from anyone than full amount of rate established by commission for service rendered, customer may recover excess by appropriate action in the courts).

For these reasons, we reverse the Commission's order finding the matter moot, and therefore, remand for the Commission to issue findings of fact and conclusions of law as to its rate determination in 2000 that apparently discriminates against Joplin district ratepayers. If the Commission cannot justify the rate design adopted for these ratepayers, it can declare the rates unduly prejudicial and unlawful.

VICTOR C. HOWARD, P.J. and JAMES M. SMART, J. concur.