STATE OF MISSOURI, at the Relation of D. A. RICE, Doing Business as DONIPHAN TELEPHONE COMPANY, Appellant, v. PUBLIC SERVICE COMMISSION of the STATE OF MISSOURI ET AL. and SOUTHWESTERN BELL TELEPHONE COMPANY, Respondents, No. 40227—220 S. W. (2d) 61.

Court en Banc, May 9, 1949.

*Donald C. Power* and *Green & Green* for appellant.

*John Mohler* for respondent. Concurred in by *John P. Randolph,* General Counsel, Public Service Commission of Missouri.

 DOUGLAS, P. J.—D. A. Rice, the appellant, owns and operates under the name of Doniphan Telephone Company three small telephone exchanges in Wayne County. The Piedmont exchange has 220 telephones, Williamsville has twenty-five, and Greenville has only three, all toll stations. Rice also owns the connecting lines between these three points and furnishes toll service between them. Rice acquired the properties in 1935 by purchase from the Referee in Bankruptcy for the North Central Telephone Company. That company had connected its lines with the long distance lines of the Southwestern Bell Telephone Company and furnished toll service to its subscribers over the Bell network. After Rice acquired the properties, Bell attempted to negotiate an arrangement for dividing toll revenues with him but reaching no agreement after six years Bell decided to discontinue toll service. Thereupon, the Public Service Commission ordered Bell to continue its toll connection with Rice, and Rice to continue to accept toll service from Bell.

The commission also initiated an inquiry and investigation for the purpose of determining the reasonable and proper division of toll revenues between the parties under Section 5670(3) R. S. 1939, Mo. RSA. This section empowers the commission to order a physical connection between telephone lines on its own motion, and if the parties do not agree on a division of the joint tolls among themselves, the commission may establish such division after a hearing.

The commission held a hearing at which the commission itself, Rice, and Bell all produced witnesses. Upon the completion of the hearing the commmission entered its report and order wherein it found as follows: Bell has prepared and uses a standard form of contract for furnishing long distance toll service to local exchanges and for division of toll revenues, known as a Traffic Agreement. At the time of the hearing every telephone system in Missouri had executed such a standard Traffic Agreement with Bell except Rice. Rice was demanding a larger percentage of the gross toll revenues than the division permitted under such agreement. Rice claimed he was losing money on long distance service, and that his share of the toll revenues under the Traffic Agreement was grossly inadequate for his needs. The commission found the evidence produced in Rice's behalf attempting to justify a larger share of the division for him was not entitled to credence. The commission found the division under Bell's Traffic Agreement was reasonable and fair, and ordered Rice to con-

tinue toll connections with Bell and to divide toll revenues received therefrom according to the Traffic Agreement until further order of the commission.

Rice appealed to the circuit court which affirmed the commission's order. He then appealed to this court, claiming the division of revenues so ordered is confiscatory and deprives him of his property without due process of law.

Rice first attacks the jurisdiction of the commission to prescribe the manner of dividing the toll revenues. There can be no question but that under Section 5670 (3) the commission has jurisdiction both to order the connection of the lines as well as the manner of dividing the toll revenues derived therefrom, inasmuch as the parties themselves did not agree upon the division. Even if the statute did not expressly authorize the commission to determine the division of tolls as it does, it has been held that such power is a necessary incident to the power to require the connection of telephone lines. See 52 Am. Jur. Tel. and Tel. Sec. 47, Anno. 16 ALR, 352.

In exercising its jurisdiction generally we have heretofore announced the rule in our decisions that the orders of the commission must be based on competent and substantial evidence. State ex rel. v. Shain, 342 Mo. 867, 119 S. W. (2d) 220. It is now our express duty, under the new constitution, in reviewing an order of the commission to determine whether it is "supported by competent and substantial evidence upon the whole record." Art. V, Sec. 22 Const. 1945. By "substantial evidence" is meant evidence which, if true, would have a probative force upon the issues. Berkemeier v. Reller, 317 Mo. 614, 296 S. W. 739. The term "substantial evidence" implies and comprehends competent, not incompetent evidence. Mississippi Valley Trust Co. v. Begley, 210 Mo. 287, 275 S. W. 540.

Rice complains that there is no evidence in the record to support the commission's order but that all the substantial evidence supports his contention. Certainly the order must be supported by evidence contained and found in the record. Ohio Bell Tel. Co. v. Public Utilities Comm. of Ohio, 301 U. S. 292. And see West Ohio Gas Co. v. Public Utilities Comm. of Ohio, 294 U. S. 63; Interstate Commerce Comm. v. L. & N. R. Co., 227 U. S. 88.

At the hearing the commission called its chief engineer as its witness. He testified he had made an investigation of Rice's telephone system and found nothing unique in its location as compared to other telephone companies throughout the State, and found nothing unusual or peculiar in Rice's operations which would have a proper bearing on the question of granting him a greater proportion of tolls than that set out by the Traffic Agreement. The commission also called its chief accountant who testified that employees of the commission had gone to Rice to obtain information for the determination

of his case. They found he did not follow the uniform system of accounts as prescribed by the commission in keeping his·records, in fact he kept no general books. The only available records were check stubs of bank accounts, a few invoices and contracts, and a subscribers' ledger. They found Rice confused the accounts of his telephone business with other personal business. It was decided that the accounting and engineering work to determine property values, operating expenses and preparation of traffic studies in order to ascertain the details of toll service interchanged with Bell would cost in all about $4,000 which was an expense Rice could not afford. The witness further testified the Traffic Agreement was generally accepted by the telephone companies of this State. The division under the agreement allows for the deduction by each party in the same amount for the costs of originating and terminating toll business from the gross toll revenue, and the balance is then divided in proportion to the length of the toll line haul of each. There was other testimony that the Traffic Agreement represented a fair division and provided adequate revenue from interchange of toll service, and there were 384 such agreements in effect in the State of Missouri. In fact Rice's was the only telephone system which had not entered into such an agreement.

Rice produced evidence to the effect the major part of his system was devoted to toll service and that he could not earn a fair return on the division of toll revenue under the Traffic Agreement. Rice had an inventory and appraisal of his system prepared by experts who also made an analysis of the cost of toll operations and an allocation of plant values to exchange and toll services. Based on these figures the experts testified Rice was losing money on his toll service but earned a return of 17% on his local exchange business. As an example of Rice's figures one expert testified that in addition to the $3,616 Rice retained from the division of toll revenues, Bell should have also paid over to him the extra sum of $7,565.22 in order to make him whole. However, the same expert admitted there might be a "flaw" in his calculations. He also testified the only difference between Rice's system and the normal telephone property in the independent field was that at Greenville Rice had only three stations, all toll, whereas under normal operation the major portion of a telephone business is devoted to local service operation. But the evidence also showed these stations at Greenville were used in Rice's toll service to Piedmont. Also that the old town of Greenville had had about 50 subscribers, that the town was moved because of the building of the Wappapello Dam, and that materials were not then available for rebuilding the local exchange system. The same expert admitted Bell's Traffic Agreement was not unfair but in Rice's case there just wasn't enough paid into the common pot of toll revenues to satisfy all parties.

The commission found the figures and calculations presented by Rice's experts were unconvincing and not entitled to credence. In its report it stated: "We are unable to give credence to the testimony given respecting the values of the property and the allocations thereof, and neither such values or their allocations is accepted herein as convincing proof thereof. Although Rice produced testimony purporting to show there were exceptional and peculiar conditions surrounding the location and operation of these properties to support his proposed valuations and the allocations thereof, which are contrary to common experience and our own in telephone operations, we still are unable, after giving full credit thereto, to find that there is such a difference as will warrant us in finding the values and allocations proposed by him to be true and correct, and to thereby reach a conclusion that the Bell's proposed division of the tolls and charges shown in its traffic agreements are unreasonable or unfair.

"The Commission cannot find that Rice has shown that the division of the tolls and charges as set forth in these standard traffic agreements offered by the Bell have been or are unreasonable and unfair. On the other hand, this Commission believes that such divisions have been and are reasonable and fair, and so finds."

The commission's conclusions that there were no exceptional or peculiar conditions with respect to Rice's system, and the proposed division of tolls under the Traffic Agreement was reasonable and fair were all supported by substantial evidence contained in the record of the hearing which is now before us for examination on appeal.

Rice objects to the findings of the commission because they ignore his evidence. He contends since there was no other evidence adduced which contradicted his figures and calculations, or even disputed them, that the commission is bound to accept them as true. Accordingly he contends his evidence is the only substantial evidence in the record. In asserting his contention he overlooks that on cross examination his evidence was discredited to such an extent that the commission held it not entitled to credence. And certainly if evidence is not credible, it does not meet the required test of being substantial. An appellate court as a matter of law passes upon the matter of substance and not of credibility. In other words an appellate court may say that particular evidence is substantial if the triers of the facts believed it to be true. Keller v. Butcher's Supply Co., (Mo.) 229 S. W. 173.

Whenever an investigation is conducted by the commission it is required under the statute to make a report in writing which shall state its conclusions and its decision or order. Sec. 5688, R. S. 1939 Mo. RSA. Thus it must find and determine the facts. And in doing so the commission determines the weight of evidence presented to it. (Cf. Ohio Utilities Co. v. Public Utilities Comm. 108 Ohio St. 143, 140 N. E. 497.) It may disregard evidence which in its judgment is

not credible, even though there is no countervailing evidence to dispute or contradict it. The rule is established in this State that the triers of fact under their duty to weigh the evidence may disbelieve evidence although it is uncontradicted and unimpeached. Weiner v. Mutual Life Ins. Co., 352 Mo. 673, 179 S. W. (2d) 39; Woehler v. City of St. Louis, 342 Mo. 237, 114 S. W. (2d) 985.

█ Rice also complains that the commission's order is based on data not introduced in evidence and not contained in the record. In the commission's report of █ the hearing there are figures on the reproduction cost per station and the depreciated value per station of seven Missouri telephone companies for the purpose of comparison with the figures on those two items furnished by Rice's experts. There is no testimony in the record to support the comparative figures nor were they introduced as evidence at the hearing. While no doubt such figures were obtained by the commission in connection with its official duties in making valuations and their correctness as to the companies they concern is not now questioned, still Rice was entitled to have them introduced at the hearing, and since they were not he was denied the right to go into their authenticity, and their application to his system. Therefore, injecting them into the report of the hearing was unauthorized and improper, and we will not consider them. But since they merely go to contradict and impeach the figures produced by Rice's experts, and inasmuch as that evidence has been otherwise discredited, any use of such comparative figures was merely cumulative, and does not affect or invalidate the commission's order. The order of the commission is amply supported otherwise by substantial evidence contained in the record.

█ We find that at the hearing substantial evidence was adduced that the Traffic Agreement provided a fair and reasonable division of toll revenues, and was generally accepted and in use over the State, and that there was nothing peculiar or exceptional about the location of Rice's system or about its operation which made such agreement unfair as to it.

Rice attempted to show as we have stated above, as in the nature of an affirmative defense, that his system and its operation was unusual and peculiar so that the Traffic Agreement was not reasonably applicable. He had the burden of proving this and his evidence was not sufficient to sustain the burden. He also claims that under the Traffic Agreement the share of the division allowed him is confiscatory. Again he had the burden and his evidence does not sustain this claim. The principle is established that a party who claims a rate is confiscatory has the burden of showing it to be such, and a court will not interfere with the exercise of the rate-making power unless confiscation is clearly established. St. Joseph Stock Yards Co. v. U. S., 298 U. S. 38.

In reviewing an order of the commission on appeal the court is limited to determining the sole question whether the commission's order is reasonable and lawful. Sec. 5690 R. S. 1939, Mo. RSA. If the order is supported by competent and substantial evidence it is not arbitrary, oppressive, or capricious but is reasonable. If the order is within both the evidence of record and the law, it is lawful. We find the order in this case is both reasonable and lawful and should be affirmed.

Accordingly, the judgment of the trial court affirming the commission's order is likewise *affirmed*. All concur.