**ST. LOUIS COUNTY WATER COMPANY, a Missouri Corporation, Appellant,**

**v.**

**STATE HIGHWAY COMMISSION OF MISSOURI, Respondent.**

No. 50586.

Supreme Court of Missouri,

Division No. 1.

Dec. 14, 1964.

Motion for Rehearing or for Transfer to Court En Banc Denied Jan. 11, 1965.

Gerald K. Presberg, St. Louis, for plaintiff-appellant.

Robert L. Hyder, Bruce A. Ring, Jefferson City, for respondent.

WELBORN, Commissioner.

The St. Louis County Water Company, a public utility engaged in the business and in the area indicated by its name, sought judicial review of an order of the State Highway Commission directing the water company to relocate some of its facilities situated on state highway right-of-way. The circuit court affirmed the order of the commission. This appeal followed. We have jurisdiction because the cost to the water company of the relocation ordered would exceed $15,000.00.

This proceeding arose under Section 227.240, RSMo 1959, V.A.M.S. The portion of that section here pertinent reads as follows:

"1. The location and removal of all telephone, telegraph and electric light and power transmission lines, poles, wires, and conduits and all pipe lines and tramways, erected or constructed, or hereafter to be erected or constructed by any corporation, association or persons, within the right of way of any state highway, insofar as the public travel and traffic is concerned, and insofar as the same may interfere with the construction or maintenance of any such highway, shall be under the control and supervision of the state highway commission.

"2. The commission or some officer selected by the commission shall serve a written notice upon the person or corporation owning or maintaining any such lines, poles, wires, conduits, pipe lines, or tramways, which notice shall contain a plan or chart indicating the places on the right of way at which such lines, poles, wires, conduits, pipe lines or tramways may be maintained. The notice shall also state the time when the work of hard surfacing said roads is proposed to commence, and shall further state that a hearing shall be had upon the proposed plan of location and matters incidental thereto, giving the place and date of such hearing. Immediately after such hearing the said owner shall be given a notice of the findings and orders of the commission and shall be given a reasonable time thereafter to comply therewith; provided, however, that the effect of any change ordered by the commission shall not be to remove all or any part of such lines, poles, wires, conduits, pipe lines or tramways from the right of way of the highway. The removal of the same shall be made at the cost and expense of the owners thereof unless otherwise provided by said commission, and in the event of the failure of such owners to remove the same at the time so determined they may be removed by the state highway commission, or under its di-

rection, and the cost thereof collected from such owners, and such owners shall not be liable in any way to any person for the placing and maintaining of such lines, poles, wires, conduits, pipe lines and tramways at the places prescribed by the commission."

Commission Project F–610(11) was for the improvement of some 8200 feet of Lindbergh Boulevard (Route 66TR) in the vicinity of its intersection with Page Boulevard in St. Louis County. The plans called for elimination of a number of curves in Lindbergh, the construction of a cloverleaf interchange at the Page Boulevard intersection and an underpass under tracks of the Rock Island Railroad. The reconstructed highway was to consist of two 24-foot roadways, paved with concrete and separated by a medial strip, with stabilized shoulders.

In 1947, pursuant to a permit issued by the commission, the company had installed a 20-inch water main in the highway right-of-way for more than 6 miles along Lindbergh, which included the area involved in Project F–610(11). The permit called for the installation of the main 8 feet west of the west edge of Lindbergh Boulevard. This main is the principal facility involved in the proceeding under review.

After conferring with water company representatives, the commission, on May 31, 1961, through its district engineer, issued an order approving plans for the location of the water company's facilities in the improvement area. Of some 8200 feet of 20-inch line involved, some 2000 feet in locations not affected by the new construction were to remain in place. The company agreed to the relocation of some 2000 feet of the line situated in sites in which the grade of the existing roadway was to be changed, including the Page Boulevard and Rock Island underpasses. Some 4200 feet of the 20-inch line were to be abandoned and relocated, along with 580 feet of 8-inch line.

The order, pursuant to Section 227.240, supra, notified the company that a hearing would be held on the commission's proposal involving the company's facilities. A hearing was held at which evidence was presented by representatives of the highway department and of the company. Following the hearing, the commission issued the order presently involved, requiring the abandonment of some 2775 feet of 20-inch line in three separate locations and approximately 300 feet of 8-inch line.

The first location in which changes in the company's facilities were ordered was in the vicinity of the intersection of Dorsett Road with Lindbergh. There the roadway was to be widened by the adding of new pavement on both sides of the existing pavement. The order called for the retirement of some 1275 feet of 20-inch main which would have been under the new pavement at distances, measured from the west edge of the pavement, of from 10 to 20 feet. It also called for the retirement of 300 feet of 8-inch main which would have been under the new pavement by a maximum of 20 feet and a minimum of 10 feet from its west edge.

The second and third locations were in areas where curves in the existing roadway were straightened. In both the second and third relocation sites, the 20-inch main would have crossed the new roadway beneath new pavement at oblique angles which would have placed some 550 feet of main under the roadway in the second relocation site. In that site some 650 feet of 20-inch main were to be retired, consisting of the 550 feet which would have been under the pavement and 100 feet which would have been in the shoulder of the roadway. In the third site, 450 feet of 20-inch main which would have been beneath the new paved roadway and some 400 feet of the main which would have been in the shoulder of the new roadway were ordered retired or removed.

The order submitted approved relocations of the mains to be retired or removed. Generally, the relocations were near the edge of the right-of-way of the highway

as improved. Where crossings of the new roadway were to be made to rejoin portions of the main left in use, the lines crossed the roadway at angles which made the portion of the line beneath the pavement approximately the same length as the width of the pavement at the point of crossing.

By its final order, the commission found that the highway improvement involved the construction of a hard surface highway; that facilities of the company ordered relocated would be either covered with hard surface pavement or incorporated in the shoulders of the roadway; that some of the facilities, if left in place, would cross under the new paved roadway "on a sharp skew angle, thereby creating a crossing of considerable length; that other parts of the facilities, if let in place, will be under the shoulder of the roadway or under the pavement to varying extents; and that the presence of a part of said facilities will interfere with the proper and economical construction and maintenance of said highway and will impede the lawful traffic thereon after reconstructed * * *."

The company sought judicial review of the final order under Civil Rule 100, V.A.M.R. (Ch. 536, RSMo 1959, V.A.M.S.). The circuit court considered the matter on the petition for review, the answer of the commission and the record of the hearing before the representatives of that body. The court affirmed the order of the commission and this appeal ensued.

■ The respondent has moved to dismiss the appeal on two grounds. The first is that the appellant's brief does not comply with Supreme Court Rule 83.05, V.A.M.R., in that it fails to set out briefly and concisely the reasons why the action of the trial court, which it seeks to have reviewed, is erroneous. We find the appellant's statement of its points relied upon sufficient. The second ground for dismissal of the appeal is that the appellant's brief is addressed to the preliminary relocation ordered by the district engineer and not to the final order made by the commis-

sion. Appellant acknowledges that its original brief did describe the relocation ordered by the district engineer rather than the commission. This was obviously an inadvertence. The respondent's brief correctly pointed out the relocations actually involved. See Supreme Court Rule 83.05 (d), V.A.M.R. The proper issues were presented and the motion to dismiss the appeal is overruled.

■ On this appeal, the company first contends that the relocation order is unsupported by competent and substantial evidence upon the whole record and is arbitrary, capricious and unreasonable. The company contends further that the order of the commission is in excess of its authority and not authorized by law because it was based not upon the evidence adduced at the hearing but upon a previously adopted policy of the commission. Inasmuch as we conclude that this second contention is dispositive of this appeal, we turn to it.

At the hearing, the commission placed in evidence a pamphlet entitled "A POLICY ON LOCATION OF UTILITY FACILITIES ON STATE HIGHWAYS." According to the pamphlet, the policy had been established by the Missouri State Highway Commission on October 14, 1958. The witness who identified the pamphlet stated that the provisions under portions of the policy statement dealing with "HIGH TYPE ROADS" applied in this case. The portions which he pointed out as being applicable were as follows:

"II. HIGH TYPE ROADS.

"A. *Existing Roadway Included in Final Improvement and Existing Utility Facilities on Present Right-of-way.*

"1. Relocate all parallel surface installations and parallel underground installations carrying pressure to near the new right-of-way lines.

\* \* \* \* \* \*

"3. All underground mainline pipes under pressure crossing the roadway shall be encased from shoulder to shoulder of roadway as a minimum."

The statement of policy is prefaced as follows:

"The following policy is established for the location or relocation of utility facilities on the right-of-way of highways in the state highway system. Any location or relocation of utility facilities contrary to this policy is declared to be an interference with the construction or maintenance of state highways and their rights-of-way and is prohibited."

The importance attached to the policy was indicated by the statement of the witness: "We don't even consider who is to pay the removal cost in trying to work out the solution to relocate the (utility) facilities to comply with the Commission's policy."

In State ex rel. State Highway Commission v. Weinstein, Mo.Sup., 322 S.W.2d 778, the court en banc held that the determination, in a case such as this, of the necessity for the removal of water lines to a new location in order to prevent interference with the construction, maintenance or use of the highway may not, in view of the provisions of Section 227.240, supra, be determined as a matter of general policy. 322 S.W.2d 783. The matter must be determined, in the particular case, upon the plans, the evidence of the parties and the matters of which the commission might (Section 536.070, RSMo 1959, V.A.M.S.) properly take judicial notice. 322 S.W.2d 787.

Weinstein pointed out that an adjudicative hearing must be afforded, in accordance with Chapter 536, RSMo 1959, V.A.M.S. Section 536.090 requires the administrative agency before which such a hearing is held to make findings of fact and conclusions of law. "The findings of fact shall be stated separately from the conclusions of law and shall include a concise statement of the findings on which the agency bases its order." Section 536.090. "Findings should be a recitation of the basic facts established by the evidence as found by the trier of the facts, from which may be inferred the ultimate facts in terms of the statutory criterion required as a basis for a particular order." 2 Am.Jur.2d, Adm.Law, Section 456, page 270. As pointed out in Michler v. Krey Packing Co., 363 Mo. 707, 253 S.W.2d 136, 142(8): "In any case, findings should be sufficient to show how the controlling issues have been decided."

In this case, essentially the only basic fact set out in the commission's order was that the mains, if left in place, would be under the shoulder of the roadway or under pavement to varying extents and that other portions of the mains would cross under the new paved roadway "on a sharp skew angle, thereby creating a crossing of considerable length." This finding was based upon the plans and there is no controversy over the existence of the facts recited. From such basic finding, and no other insofar as appears from the order, the conclusion is drawn that the presence of a part of the facilities "will interfere with the proper and economical construction and maintenance of said highway and will impede the lawful traffic thereon after reconstructed \* \* \* ."

Such is also the position taken in the statement of policy. Although the presumption exists that the commission acted on the basis of the evidence adduced at the hearing (2 Am.Jur.2d, Adm.Law, Section 453, page 265), the fact is that, in this case, the commission made no basic findings on the evidence presented at the hearing other than its findings regarding the location of the mains upon the completion of the project.

We deem it unnecessary here to set out in detail the controverted evidence presented at the hearing and concerning which no basic findings were made. However, we

do note that the commission, on the issue of interference with construction, presented testimony designed to show that, in a project such as this, in the preparation of the sub-base for the pavement and its base, unsatisfactory soil conditions are frequently encountered, requiring the removal of the existing soil to a depth of "several feet." The witness testified that the existence of such conditions is not known in advance and that he could not say either that they would or would not be encountered on this project. The witness further suggested the possibility of damage to the mains if left in place by heavy equipment passing over them in the construction process. On the other hand, the company presented evidence of two recent commission projects involving improvement of Lindbergh Boulevard, one of which was in the immediate vicinity of the present project. The company's evidence showed that the improvements in those two instances, both of which involved the laying of new pavement over existing mains of the company which were left in place, were completed without interference by the mains which were left in place.

Likewise, witnesses for the commission testified concerning the possibility of leaks or breaks in the mains if left in place, which might present maintenance problems and interfere with the use of the highway. A company witness, on the other hand, testified that leaks could not occur because the company would install bell joint clamps at every joint in the mains, which would prevent leaks during the expected life of the mains. He also testified concerning the records of the frequency of breaks in the company's mains of the types here involved in an effort to show that the probability of a break in the mains ordered to be relocated was quite remote.

We do not deem it our proper function to decide, in this case, whether or not the commission could, on the basis of this and other evidence presented, have found basic facts to support its ultimate finding. "The Commission is the fact-finding body, and the Court examines the evidence not to make findings for the Commission but to ascertain whether its findings are properly supported." So spoke Chief Justice Hughes in Florida v. United States, 282 U.S. 194, 51 S.Ct. 119, 125, 75 L.Ed. 291.

We must take the case as the commission found it, not as it might have found it. 2 Am.Jur.2d, Adm.Law, Section 756, page 656.

We have in this case the sole basic finding that the mains would be under the pavement or in the shoulder of the roadway upon completion of the project. The commission did not attempt to show that the normal construction activity would require excavation of the new roadway to a depth greater than that at which the mains were laid. They pointed out no changes of grade in the relocation areas which would necessitate such work. In fact, the commission witness who brought up the possibility of encountering the mains in the construction process did not know the depth at which they were laid. The commission's testimony on breaks and leaks related to such occurrences elsewhere, one of which was in the company's lines. The commission offered no evidence to show that the load of the traffic on the roadway would affect the mains beneath it. The only evidence on this score was by the company and showed that the mains, beneath the cover of the pavement, its base and sub-base, were designed to withstand loads which traffic might impose upon them.

Support for the conclusion that the mere presence of the mains would constitute interference with the construction, maintenance and use of the new highway is found only in the commission's declaration of policy to that effect. We, therefore, must conclude that, the commission having made no basic findings from the evidence adduced at the hearing, the commission's ultimate finding was based upon the previously established policy, and not upon the evidence adduced at the hearing. As pointed out in Weinstein, supra, such is not a proper basis for determination of the matter.

Inasmuch as the commission made no findings pertaining to the issues properly determinative of this case, the matter should be remanded to the commission for such determination.

Therefore, the judgment of the circuit court affirming the commission's order is reversed and the cause remanded to the circuit court with directions to remand to the commission for further proceedings in accordance with this opinion.

HOUSER and HIGGINS, CC., concur.

PER CURIAM.

The foregoing opinion by WELBORN, C., is adopted as the opinion of the Court.

All of the Judges concur, except HENLEY, J., not sitting.

## ON MOTION FOR REHEARING OR FOR TRANSFER TO COURT EN BANC

PER CURIAM.

■■ By its motion for rehearing or in the alternative for transfer to the Court En Banc, the Commission argues that the findings which it made in this case were sufficient. The motion asserts: "The only ultimate fact which the Commission was required to find was whether or not the water mains in question would interfere with the construction, maintenance or use of the highway." Insofar as the finding of ultimate fact is concerned, we can agree with this contention. We do not agree, however, that such ultimate finding, couched in the statutory language, is the only finding the Commission was required to make. The Commission must also have found the basic facts from which such ultimate fact might be inferred. "Courts do not want agencies to include detailed summaries of testimony in their findings; they want what they call the basic facts. * * * The basic findings are those on which the ultimate finding rests; the basic findings are more detailed than the ultimate finding but less detailed than a summary of the evidence." 2 Davis, Administrative Law Treatise, Section 16.06, pages 450, 451. Only when the administrative agency makes such basic findings can a court properly perform its limited function of review of the administrative action. To repeat Judge Hyde's statement in Michler v. Krey Packing Co., 363 Mo. 707, 253 S.W. 2d 136, 142, "In any case, finding should be sufficient to show how the controlling issues have been decided."

Here the basic facts found by the Commission afford a foundation for the ultimate fact only by reason of the Commission's policy. Our view that the Commission's finding was essentially based upon such policy is reinforced by the Commission's motion for rehearing.

In arguing that the opinion misconstrued State ex rel. Highway Commission v. Weinstein, Mo.Sup., 322 S.W.2d 778, the Commission states: "The Weinstein case did not hold that after a hearing was held the Commission could not determine from the evidence presented whether it should or should not apply its policy." Weinstein did hold that a matter such as this must be determined in the particular case on the plans, the evidence of the parties and the matters of which the Commission might properly take judicial notice. Application of the Commission's policy to determine the matter is inconsistent with such requirement because the policy declares: "Any location or relocation of utility facilities contrary to this policy is declared to be an interference with the construction or maintenance of state highways and their rights-of-way and is prohibited."

The object of the hearing is not, as the Commission argues, to determine whether or not the policy should be applied. The object of the hearing is to determine whether or not the evidence shows that in the particular project the utility facilities would

interfere with the construction, maintenance or use of the highway.

The motion for rehearing or in the alternative for transfer to the Court En Banc is overruled.