STATE ex rel., INTERNATIONAL TELECHARGE, INC., and State ex rel., American Operator Services, Respondents,

State ex rel., Midwest Independent Coin Pay Phone, Appellant,

v.

The MISSOURI PUBLIC SERVICE COMMISSION, Respondent,

Office of the Public Counsel and Southwestern Bell Telephone Co., Intervenors–Respondents.

STATE ex rel., INTERNATIONAL TELECHARGE, INC., State ex rel., American Operator Services, and State ex rel., Midwest Independent Coin Pay Phone, Respondents,

v.

The MISSOURI PUBLIC SERVICE COMMISSION, Respondent,

Office of the Public Counsel, Intervenor–Appellant,

Southwestern Bell Telephone Co., Intervenor–Respondent.

STATE ex rel., INTERNATIONAL TELECHARGE, INC., Respondent,

State ex rel., American Operator Services, and State ex rel., Midwest Independent Coin Pay Phone, Plaintiffs,

v.

The MISSOURI PUBLIC SERVICE COMMISSION, Appellant,

Office of the Public Counsel, and Southwestern Bell Telephone Co., Intervenors.

No. WD 42848.

Missouri Court of Appeals, Western District.

Feb. 13, 1991.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 2, 1991.

Application to Transfer Denied May 3, 1991.

William M. Barvick, Jefferson City, Philip Newmark, Clayton, for appellant Midwest Independent Coin Pay Phone.

Mark D. Wheatley, Asst. Public Counsel, Jefferson City, for intervenor-respondent Office of the Public Counsel.

Penny G. Baker, Asst. Gen. Counsel, Jefferson City, for respondent Missouri Public Service Com'n.

Richard S. Brownlee, II, Jefferson City, for respondent Intern. Telecharge, Inc.

Mark P. Johnson, Kansas City, for respondent American Operator Services.

John Randolph Bakewell, Jefferson City, for respondent The Missouri Public Service Com'n.

Roger K. Toppins, St. Louis, for intervenor-respondent Southwestern Bell Telephone Co.

Before BERREY, P.J., and FENNER and ULRICH, JJ.

ULRICH, Judge.

Midwest Independent Coin Pay Phone Association (MICPA), an organization representing pay telephone manufacturers, dealers, service providers and owners, appeals the Public Service Commission's decision addressing the provision of operator services within the State of Missouri. The Commission, in its decision approving tariffs of three certificated telecommunications companies, denying one tariff and denying another application for a certificate, imposed restrictions upon the telecommunications companies limiting their ability to collect certain charges associated with operator assisted phone calls placed from privately owned pay telephones. On appeal, MICPA contends that the restrictions imposed by the Commission unreasonably and unlawfully hinder its members' rights to collect these charges. The Commission's decision is affirmed.

Operator services are provided to pay telephone users, referred to as end users, desiring to make person-to-person calls, collect calls or calls billed to a third party or calling card. Alternative operator services (AOS) is a recent development in telecommunication service whereby an AOS company contracts with a business subscriber to provide exclusive operator services to individuals using pay telephones located on the subscriber's premises or pay telephones controlled by the subscriber. The business subscriber, referred to as a traffic aggregator, is usually a hotel, motel, university, hospital or other business which has pay telephones available for public use. Thus, an end user placing an operator assisted call from a pay telephone utilizes the traffic aggregator's pay telephone and is provided operator service by the AOS company.

The pay phone owner selects which AOS company will provide operator assistance to end users of his pay phone and the pay phone is programmed to automatically direct calls requiring operator assistance to the chosen AOS company. The AOS company receives a tariffed rate from the end user for furnishing operator services. The

AOS company provides the pay phone owner a commission from this tariffed rate in return for the owner's decision to route calls requiring operator assistance to the AOS company. The pay phone owner or location aggregator imposes an additional charge on each call requiring operator assistance known as a location surcharge. The AOS company commonly collects the location surcharge from end users on behalf of the location aggregator. Additionally, local exchange companies (LECs), such as Southwestern Bell, commonly include charges from the AOS companies, including tariffed rates and location surcharges, on the LEC's monthly bill to end users. Thus, a telephone customer may receive a monthly bill which includes charges from his LEC, tariffed rates reflecting operator assistance from AOS companies and location surcharges imposed by traffic aggregators.

In the current case, Dial U.S., Dial U.S.A., Teleconnect, and International Telecharge, Inc. (ITI), all certificated telecommunications companies in Missouri, sought the Commission's approval of tariffs they had filed setting forth the terms and conditions by which these AOS companies sought to provide operator services to intrastate telephone customers in Missouri. Additionally, American Operator Services, Inc., d/b/a National Telephone Services (NTS), not certificated in Missouri, filed an application with the Commission for a certificate as an authorized provider of operator services. The Commission consolidated these five separate proceedings for a single hearing. MICPA intervened in this consolidated proceeding in support of the tariffs filed by the AOS companies and in support of NTS' application for a certificate.

Following a hearing, the Commission issued its report and order wherein it approved, with certain restrictions, the tariffs filed by Dial U.S., Dial U.S.A., and Teleconnect, but disapproved ITI's tariff and denied NTS' application for a certificate of authority. In particular, in approving the tariffs of Dial U.S., Dial U.S.A. and Teleconnect the Commission determined that the AOS companies' charges for operator services must be the same regardless of the location from which the call is initiated, thus limiting the AOS companies' ability to impose inflated charges on end users of pay telephones in order to recoup the commissions which the AOS companies must pay to traffic aggregators. Additionally, the Commission prohibited the practice of location surcharges appearing on LEC's monthly bills. Dial U.S., Dial U.S.A., and Teleconnect did not appeal the Commission's decision. MICPA appealed that portion of the Commission's decision imposing the restrictions described above on the three AOS companies. ITI and NTS also appealed the Commission's decision.

On appeal, the circuit court reversed that part of the Commission's decision denying ITI and NTS the right to do business in Missouri. However, the circuit court affirmed that portion of the Commission's decision imposing the restrictions upon the AOS companies which MICPA contested. MICPA appeals to this court contesting those provisions of the Commission's decision restricting the AOS companies billing practices.

On appeal, MICPA contends that the Commission erred in imposing restrictions upon the AOS companies, limiting their ability to collect certain charges associated with the provision of operator services to end users of pay telephones, because (I) the Commission failed to make any findings of fact that would support such a decision and the conclusive statements purporting to be findings of fact are unsupported by any competent and substantial evidence in the record; (II) the Commission unlawfully attempted to regulate the rates charged by pay phone providers in a manner that is contrary to and prohibited by §§ 392.520 and 392.240, RSMo Supp.1990; and (III) the Commission's decision amounted to unlawful rulemaking by an administrative agency in violation of requirements contained in chapter 536, RSMo 1986. The Commission's decision is affirmed.

I

For its first point on appeal, MICPA contends that the Commission erred in restrict-

ing the AOS companies' ability to collect certain charges associated with providing operator services to end users of pay telephones because the Commission failed to make any findings of fact that would support imposing such restrictions. In particular, MICPA contends that the Commission's actions were unlawful because the Commission's order only contained a series of conclusive statements which fail to meet the provisions of § 536.090, RSMo 1986, requiring that the Commission's orders contain findings of fact. Alternatively, MICPA contends that, should this court determine that the Commission's findings of fact are adequate, these findings are not supported by competent and substantial evidence. Appellant's contention that the Commission's order contains inadequate findings of fact is first considered.

■ Missouri courts have never adopted a rigid standard for determining the adequacy of findings of fact. *Glasnapp v. State Banking Bd.*, 545 S.W.2d 382, 387 (Mo.App.1976). Rather, the courts apply the standard found in *Glasnapp* to the particular facts of the case:

> The most reasonable and practical standard is to require that findings of fact be sufficiently definite and certain or specific under the circumstances of the particular case to enable the court to review the decision intelligently and ascertain if the facts afford a reasonable basis for the order without resorting to the evidence.

*Id.* (quoting 2 Am.Jur.2d Administrative Law § 455, p. 268). Additionally, findings of fact are adequate when they do not "leave the reviewing court to speculate as to what part of the evidence the [Commission] believed and found to be true and what part it rejected." *State ex rel. American Tel. & Tel. Co. v. Public Serv. Comm'n*, 701 S.W.2d 745, 754 (Mo.App. 1985).

■ The Commission's order contains a fifteen-page section entitled findings of fact wherein the Commission discusses proposals made by various parties, evidence presented supporting these proposals, and the Commission's determinations of fact.

The order contains the following determinations:

> The evidence indicates that there is a fundamental difference between provision of operator services to traffic aggregators (AOS) on the one hand, and provision of operator services directly to end users ancillary to toll service (OS), on the other. Where such services are provided through a traffic aggregator the end user has little direct influence in choosing the provider. The provider is chosen by the traffic aggregator. In the provision of operator services directly to end users ancillary to interexchange toll service, the end user selects the carrier it desires.... Under these circumstances, the end user can influence carriers to provide good service at a reasonable price by his freedom to choose a competitor.... In the AOS market, there is little competitive choice for the end user.... In view of the foregoing, the Commission determines that the end user of an AOS provider is bereft of a meaningful choice.... The Commission determines that operator services offered ancillary to long-distance service provided directly to end users is in the public interest. Since end users can choose another provider if dissatisfied with rates and service, the competitive market will influence such providers to offer quality services at a reasonable price or suffer the consequences of losing customers. The Commission further determines that operator services offered to end users through traffic aggregators are in the public interest where the provider primarily renders such services directly to end users and proposes to offer operator services under the same terms, conditions and rates to end users and traffic aggregators as to end users directly served.... The Commission determines that only tariffed rates approved by this Commission for certificated providers should be bundled into a single charge on local exchange billings with disconnection for nonpayment. Location surcharges should not appear on LEC's bills. As long as location surcharges appear on the LEC's bills, customers will remain

under the misapprehension that they will suffer disconnection for nonpayment.

MICPA contends that the Commission's determinations represent conclusive statements rather than adequate findings of fact.

Without resorting to the evidence, this court is able to determine that the Commission based its order upon its belief that end users are disadvantaged by a lack of choice when utilizing operator services offered through traffic aggregators as opposed to operator services offered directly to end users ancillary to interexchange toll service. Additionally, the Commission's order demonstrates that it believed that end users are disadvantaged by their misapprehension that their service will be disconnected for nonpayment of location surcharges. Based upon this evidence, the Commission determined that charges for operator services must be the same whether offered through traffic aggregators or ancillary to toll service. The commission also, based upon its findings, prohibited the practice of placing location surcharges on local exchange company bills. These findings permit this court to "review the decision intelligently and ascertain if the facts afford a reasonable basis for the order without resorting to the evidence." *Glasnapp*, 545 S.W.2d at 387. Additionally, these findings of fact are sufficient because this court is not left to speculate as to what part of the evidence the Commission believed and what part it rejected. *State ex rel. American Tel. & Tel. Co.*, 701 S.W.2d at 754.

■ MICPA also contends that the Commission's findings of fact are not supported by competent and substantial evidence in the record. In particular, appellant contends the Commission's findings concerning the prohibition of location surcharges appearing on LEC's bills are not supported by substantial evidence. In addition to the findings set forth above, the Commission determined that:

The Commission does not wish to see the implied threat of disconnection used to collect charges over which the Commission has such limited control. In addition, the Commission views location surcharges as another example of the abuses to which the public has been subjected by the operator service industry and does not wish to lend to such surcharges any implied blessing by allowing this collection through LEC billing.

MICPA contends that the Commission's actions are improper because the record is void of any evidence of end users being disconnected or threatened with disconnection for failure to pay location surcharges. However, the restrictions imposed upon the AOS companies prohibiting the practice of placing location surcharges on LEC's bills is premised upon the Commission's finding that customers mistakenly believe that service may be disconnected for failure to pay these charges not upon evidence that AOS companies have previously threatened such disconnection. The Commission specifically determined that "[a]s long as location surcharges appear on LEC's bills, customers will remain under the misapprehension that they will suffer disconnection for nonpayment." This court must determine whether this finding is supported by substantial evidence.

The consolidated hearing resulted in a voluminous amount of evidence being presented to the Commission. Among this evidence was the testimony of John B. VanEschen, an employee of the Commission's Division of Utilities. Mr. VanEschen testified that the Commission received several complaints concerning operator services. Among those complaints, one customer, in a complaint filed July 7, 1988, felt that it was not fair to disconnect local service for failure to pay the excessive rates charged by AOS companies. Another complaint, filed August 4, 1988, stated that excessive AOS charges should not be placed on customers' local exchange bills.

The Commission also heard testimony from Dianne Drainer, a public utility economist for the Office of the Public Counsel. Ms. Drainer testified regarding the problem of permitting disconnection for failure to pay location surcharges. Ms. Drainer testified that separating location surcharges from other charges on LEC's bills would

present a problem. She stated that informing the public that service may not be disconnected for failing to pay location surcharges would also present a problem. Ms. Drainer objected to the practice of bundling location surcharges with other charges when customers are unaware of what services individual charges represent. At another point in her testimony, Ms. Drainer again stated that location surcharges confuse customers because they are unaware of what these charges represent.

Substantial evidence is evidence which, if true, would have a probative force upon the issues. *State ex rel. Rice v. Public Serv. Comm'n*, 359 Mo. 109, 220 S.W.2d 61, 64 (banc 1949). The term "substantial evidence" implies competent, not incompetent evidence. *Id.* The evidence presented by Mr. VanEschen, including a complaint regarding possible disconnection for excessive rates charged by AOS companies and a complaint concerning AOS charges appearing on LEC's bills, is evidence which, if true, has a probative force upon the issue of whether end users are confused by the current billing practices. Ms. Drainer's testimony that location surcharges confuse customers and that it would be difficult to inform the public that service may not be disconnected for these charges present substantial evidence supporting the Commission's determination that some customers mistakenly believe service may be disconnected for failure to pay these charges. Appellant's first point is denied.

## II

MICPA next contends that the Commission attempted to set and regulate the rates charged by pay phone providers in a manner that is contrary to and prohibited by §§ 392.520 and 392.240. Section 392.520 grants the Commission limited jurisdiction over private pay phone providers. The reduced regulatory scheme contemplated by the statute results in pay phone providers being exempt from tariff filing requirements and requirements regarding regulation of pay phone rates. Additionally, MICPA contends that § 392.240 requires that the Commission, prior to exercising rate setting powers with regard to private pay phone owners, inquire into what constitutes a reasonable return on investment for private pay phone owners.

The Commission's authority is limited to that specifically granted by statute or warranted by clear implication as necessary to effectively render a specifically granted power. *State ex rel. West Plains v. Public Serv. Comm'n*, 310 S.W.2d 925, 928 (Mo. banc 1958). With regard to private pay phone owners, the authority of the Commission is limited by the statutory provisions relied upon by MICPA. However, neither of the restrictions imposed upon the AOS companies unlawfully regulate pay phone owners. The prohibition of location surcharges appearing on LEC's bills in no way prohibits location aggregators from imposing these charges on end users. This restriction merely prohibits AOS companies and LECs from bundling such charges together with tariffed rates. The Commission's decision restricts AOS companies but does not regulate pay telephone owners. Such regulation of AOS companies is within the Commission's realm of authority and does not violate the statutes relied upon by appellant. Similarly, requiring that charges for operator service be the same regardless of the location from which the service is provided is a lawful regulation of the AOS company's rates within the Commission's authority and not a regulation of pay phone owners. Appellant's second point is denied.

## III

For its final point, MICPA contends that the restrictions imposed upon the AOS companies were unlawful because the Commission failed to follow the requirements of chapter 536 relating to the adoption and changing of administrative rules. The Commission argues that MICPA failed to properly raise this contention in its application for rehearing as required by § 386.500.2, RSMo 1986, and urges this court to not consider appellant's third

point. Section 386.500.2 prohibits appellants from relying upon any ground for reversing the Commission's decision which is not set forth in the parties' application for rehearing. *See State ex rel. West Plains,* 310 S.W.2d at 934.

MICPA, relying upon *State Tax Comm'n v. Administrative Hearing Comm'n,* 641 S.W.2d 69 (Mo. banc 1982), contends that the Commission's error in failing to follow the procedures for administrative rule making may not be waived and may be raised at any stage of the proceedings. In *State Tax Comm'n,* the Missouri Supreme Court determined that, contrary to the provisions of § 386.500.2, the defense of lack of subject matter jurisdiction may not be waived and may be raised in the appellate courts for the first time even though not properly preserved before an administrative agency. MICPA contends that failure to follow administrative rule making procedures, like failure to acquire subject matter jurisdiction, may be raised despite the mandate of § 386.500.2.

While this court recognizes that *State Tax Comm'n* may create a narrow exception to the requirements of § 386.500.2, that exception applies only to subject matter jurisdiction and will not be extended by this court. Appellant's contention that the Commission failed to follow the procedural requirements set forth in § 536.021, RSMo 1986, is not equivalent to challenging the Commission's subject matter jurisdiction. Administrative rules adopted without complying with the procedural requirements set forth in § 536.021 may be invalid, but such procedural invalidity does not necessarily deprive the Commission of subject matter jurisdiction. Given appellant's failure to assert a point of error within the narrow exception created by *State Tax Comm'n,* MICPA must comply with the requirements of § 386.500.2. Therefore, this court's review is limited to those grounds raised in appellant's application for rehearing and this court will not consider appellant's third point. The Commission's decision imposing restrictions

upon Dial U.S., Dial U.S.A., and Teleconnect is affirmed.

All concur.