STATE of Missouri ex rel. LACLEDE GAS COMPANY and Union Electric Company d/b/a Ameren UE, Appellants,

v.

PUBLIC SERVICE COMMISSION OF THE STATE of Missouri, Respondent.

No. WD 61486.

Missouri Court of Appeals, Western District.

March 4, 2003.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 24, 2003.

Gary W. Duffy, Jefferson City, MO, Thomas M. Byrne and Michael C. Pendergast, St. Louis, MO, for appellants.

Dana K. Joyce and Thomas R. Schwarz, Jr., Jefferson City, MO, for respondent.

Before JAMES M. SMART, JR., P.J., ROBERT G. ULRICH and RONALD R. HOLLIGER, JJ.

ROBERT G. ULRICH, Judge.

Laclede Gas Company ("Laclede"), a gas corporation and public utility, and Union Electric Company d/b/a AmerenUE ("AmerenUE"), a gas, electric, and steam heating corporation and a public utility, appeal the Cole County Circuit Court's decision affirming the Public Service Commission's (the "Commission") Second Report and Order (the "Second Order"). In its Second Order, the Commission adopts a depreciation calculation for net salvage value that reflects net salvage amounts recently incurred by Laclede instead of estimating the future cost of removal and spreading the cost over the life of the asset. Laclede and AmerenUE raise several grounds on appeal. Because the Commission's Second Order is not supported by adequate findings of fact, this case is remanded to the Commission with directions to enter proper findings of fact to support its decision.

## Factual and Procedural History

Laclede filed revised tariff sheets with the Commission on January 26, 1999, reflecting increased rates for gas service provided to customers in Missouri. The Commission issued an order on February 9, 1999, initiating a general rate case, Case No. GR–99–315, and suspending the tariffs until December 26, 1999. The order also contained a procedural schedule as well as a deadline for interventions. After the order was issued, AmerenUE filed a petition to intervene in the case. The Commission granted AmerenUE's petition on April 29, 1999.

A disputed issue in the case was how Laclede should recover the costs incurred in retiring assets at the end of their useful lives. The majority of Laclede's assets are composed of underground pipes and equipment used to carry natural gas. The cost to retire such assets is determined by estimating the "net salvage value," which is equal to gross salvage minus the cost of retiring the asset from service. In effect, the cost to dispose of the asset is deducted from any amounts received from the disposal.

Laclede and the Commission's Staff (the "Staff") proposed different methods of calculating net salvage value. Laclede's method of determining net salvage value is

to estimate the future cost of retiring the asset and spread that cost over the life of the asset. It characterizes this depreciation method as the traditional method generally used by the Commission. The Staff advocated calculating net salvage value by examining the actual costs that Laclede incurs for retiring the asset to determine what those costs would be in the future. The Staff claimed that it advocated a different method of calculating net salvage value because Laclede was recovering more in depreciation from its customers for net salvage than it was spending. The Staff asserted that its method of depreciation would more accurately approximate Laclede's cost of retiring the asset. Laclede countered that the Staff's method is inconsistent with Generally Accepted Accounting Principles (GAAP) and fails to account for inflation's effect on the cost of retiring assets in the future.

On December 14, 1999, the Commission issued its Report and Order (the "First Order") adopting the Staff's method of determining net salvage value. The Commission found that the Staff's recommendation was just and reasonable because it compensated Laclede without resulting in Laclede overrecovering from its customers. Both Laclede and AmerenUE filed motions for rehearing on the issue of how net salvage value was to be calculated. The Commission issued an order denying rehearing on April 13, 2000. Laclede filed a petition for writ of review with the Cole County Circuit Court in which AmerenUE intervened. The Cole County Circuit Court entered its Order and Judgment on December 1, 2000, finding that the Commission's First Order was not supported by adequate findings of fact and thereby remanded the First Order to the Commission with directions to provide "findings of fact sufficient to support a resolution of the net salvage issue."

The Commission issued its Second Order on June 28, 2001, finding that the Staff's method of calculating net salvage value was appropriate. Laclede and AmerenUE filed an application for rehearing which the Commission denied on August 14, 2001. Subsequent to that, Laclede and AmerenUE filed a petition for writ of review of the Commission's Second Order with the Circuit Court of Cole County. The Cole County Circuit Court issued its judgment affirming the Commission's Second Order on April 29, 2002. This appeal followed.

Laclede and AmerenUE raise five points on appeal. As the first point on appeal is dispositive, it is the only one addressed. In their first point on appeal, Laclede and AmerenUE claim that the Commission erred in issuing its Second Order because the order was not supported by adequate findings of fact as required by sections 386.420, 536.090, RSMo 2000, in that the Commission's findings of fact are inadequate because they fail to provide a rationale for adopting the Staff's depreciation method for calculating net salvage value.

## Whether the Commission's Second Order Was Supported By Adequate Findings of Fact

In their first point on appeal, Laclede and AmerenUE claim that the Commission erred in issuing its Second Order because such order is not supported by adequate findings of fact. §§ 386.420, 536.090, RSMo 2000. Laclede contends that the Commission's findings of fact are insufficient for failing to provide an explanation for its decision to adopt the Staff's depreciation method for calculating net salvage value. Specifically, Laclede asserts that the Staff's depreciation method is a departure from the traditional depreciation method generally used by the Commission. Laclede argues that such a departure requires

an explanation. The Commission counters that its findings of fact were sufficient because they contained at least five justifications for adopting the Staff's depreciation method. Additionally, it argues that it is not required to provide a detailed accounting of the facts in its order.

When a hearing occurs before the Commission, it is required to "make a report in writing in respect thereto, which shall state the conclusion of the commission, together with its decision, order or requirement in the premises." § 386.420.2, RSMo 2000. The Supreme Court interprets section 386.420.2, RSMo 2000, as requiring the Commission to include findings of fact within its decision that are not "completely conclusory." *State ex rel. Monsanto Co. v. Pub. Serv. Comm'n*, 716 S.W.2d 791, 795 (Mo. banc 1986) (relying on *State ex rel. Rice v. Pub. Serv. Comm'n*, 359 Mo. 109, 220 S.W.2d 61 (1949)). Findings of fact that "provid[e] no insight into how controlling issues were resolved are inadequate." *Id.* Because section 386.420, RSMo 2000, does not set forth what constitutes adequate findings of fact, section 536.090, RSMo 2000, which applies to "[e]very decision and order in a contested case," has been used by Missouri courts to fill in the gaps of section 386.420, RSMo 2000. *State ex rel. Noranda Aluminum, Inc. v. Pub. Serv. Comm'n*, 24 S.W.3d 243, 245 (Mo.App. W.D.2000) (quoting section 536.090, RSMo 2000). Section 536.090, RSMo 2000, provides, in pertinent part:

> Every decision and order in a contested case shall be in writing, and except in default cases or cases disposed of by stipulation, consent order or agreed settlement, the decision, including orders refusing licenses, shall include or be accompanied by findings of fact and conclusions of law. The findings of fact shall be stated separately from the conclusions of law and shall include a con-

cise statement of the findings on which the agency bases its order.

The issue of whether the Commission made adequate findings of fact in its Second Order is an issue of law for the independent judgment of the appellate court. *Friendship Vill. of South County v. Pub. Serv. Com'n*, 907 S.W.2d 339, 345 (Mo.App. W.D.1995).

■ An inflexible standard for determining the adequacy of findings of fact has not been espoused in Missouri. *Glasnapp v. State Banking Bd.*, 545 S.W.2d 382, 387 (Mo.App.1976). Instead, the following standard is applied to the specific facts of the case:

> The most reasonable and practical standard is to require that the findings of fact be sufficiently definite and certain or specific under the circumstances of the particular case to enable the court to review the decision intelligently and ascertain if the facts afford a reasonable basis for the order without resorting to the evidence.

*Id.* (quoting 2 Am.Jur.2d Administrative Law § 455, at 268). Findings of fact are inadequate when they "leave the reviewing court to speculate as to what part of the evidence the [Commission] believed and found to be true and what part it rejected." *State ex rel. Int'l. Telecharge, Inc. v. Mo. Pub. Serv. Comm'n*, 806 S.W.2d 680, 684 (Mo.App. W.D.1991) (quoting *State ex rel. Am. Tel. & Tel. Co. v. Pub. Serv. Comm'n*, 701 S.W.2d 745, 754 (Mo.App. W.D.1985)).

■ The Commission's Second Order contains a three-page section titled "findings of fact." Within that section is a two-page section titled "depreciation—net salvage value" wherein the Commission discusses the depreciation methods proposed by each party and its conclusion that its Staff's recommendation is the appropriate method to adopt. The Commission recites

the following facts as the basis for its decision:

> The method for calculating net salvage value with regard to depreciation rates is at issue in this case. The Staff of the Missouri Public Service Commission argued that to calculate the depreciation on the future cost of removal, the Commission should use the actual amounts the company is paying per year for the cost of removal. Laclede Gas Company argued that the calculation for depreciation should be made by estimating the future cost of removal and spreading that cost over the life of the asset.
>
> Currently, Laclede is recovering more in depreciation for net salvage than it is spending. In addition, ratepayers will pay $2.3 million more in depreciation annually under Laclede's method of calculation. Under Laclede's theory, it would be allowed to recover from its current customers the estimated cost of future expenditures. Laclede has no definite plans for the removal of the major assets involved in this net salvage calculation. Laclede is not currently spending funds on the removal or salvage of these assets. Laclede's arguments for spreading the costs of removal of these assets among different generations of customers were not persuasive because of the uncertainty of how much cost will be incurred for removal, when the removal will occur, or if the removal will occur at all. Therefore, the Commission finds that Laclede has failed to meet its burden of showing that its depreciation calculation for net salvage is just and reasonable. Laclede has not shown why it is just and reasonable to recover from its current customers more than its current expenditure for net salvage.
>
> The Commission finds that the Staff's proposed calculation of net salvage cost is just and reasonable. Staff's proposed calculation will allow Laclede to collect from its current customers the amount Laclede is currently expending for final net salvage cost for mass property accounts. Staff's calculation will also allow recovery of the amount Laclede is expending for interim cost of removal for life span property accounts. Thus, Staff's calculation will allow Laclede to recover the amounts it is currently spending for net salvage *without overrecovering* from its ratepayers, which is a just and reasonable result. (emphasis added)

> \*　\*　\*　\*　\*　\*

> The Commission further finds that Laclede's depreciation accrual balance represents an overrecovery of $26,5755,903 (sic). Therefore, in accordance with Staff's recommendation, the current depreciation rates ... shall remain in effect to allow the State to observe if the accrual balances continue to overrecover, underrecover, or stay constant.
>
> Laclede has historically submitted a general rate case to the Commission every few years. This process of rate adjustment is sufficient to compensate Laclede if the net salvage should increase in the future. If in the future Laclede's expenditures for net salvage exceed the amount it is collecting from its customers, Laclede can and should apply for new depreciation rates.

The findings of fact in this case are remarkably similar to those discussed in *State ex rel. Noranda Aluminum, Inc. v. Public Service Commission*, 24 S.W.3d 243, 246 (Mo.App. W.D.2000). In *Noranda*, the findings of fact consisted of "a general discussion of the parties' positions and a brief explanation of which position the [C]ommission deemed correct." *Id.* at 245. Here, the Commission's Second Order provides an overview of each party's

depreciation theory and then declares the Staff's theory more appropriate.

The Commission argues that its decision is supported by the following findings of fact: (1) Laclede is not currently incurring net salvage costs; (2) Laclede is unable to determine when, if ever, it will incur future net salvage costs; (3) Laclede has failed to prove that its estimate for future net salvage costs is reasonable; (4) Laclede is currently overrecovering from its customers; and (5) Laclede's method of depreciation would allow it to continue to overrecover from its customers. Laclede and AmerenUE contend that these findings of fact are conclusory, thereby rendering them inadequate. The Commission counters that its adoption of the Staff's depreciation method is not absolute in that Laclede's rates could be adjusted in the future should its net salvage expenses increase.

The Commission's findings of fact suggest that it found that Laclede's excess depreciation reserves are the result of the manner in which net salvage value is calculated. Without resorting to the evidence, it is difficult to determine the basis of this finding. The Commission's findings of fact fail to explain how the Commission determined that the excess depreciation reserves were the result of the net salvage value calculation. Moreover, the Commission fails to provide a rationale for finding that a large depreciation reserve is a controlling factor in determining how to calculate Laclede's net salvage value. Not only does the Commission fail to provide adequate findings of fact to support its conclusion that Laclede's depreciation reserves are the result of the net salvage value calculation, it also fails to rule out other factors that could be the cause of Laclede's reserves. Laclede's large depreciation reserves could be the result of any number of factors, none of which are addressed by the Commission. For example, the depreciation reserves could be the result of good management on the part of Laclede.

The Commission's findings of fact also imply that the Staff's depreciation method of calculating net salvage value is less likely to result in Laclede overrecovering from its customers than Laclede's depreciation method. The Commission's findings of fact fail, however, to support such a contention. No evidence or facts of any nature are cited by the Commission to support this conclusion. Because the Commission failed to provide any support for its finding that Laclede's depreciation reserves are the result of how net salvage is calculated, its findings of fact are conclusory. Similarly, the Commission's findings of fact stating that the Staff's depreciation method is less likely to result in overrecovery from Laclede's customers are conclusory for failing to provide any support of this finding.

 The Commission argues that detailed findings of fact are unnecessary in an agency report and order. An agency needs to provide the "basic findings" upon which its decision rests. *AT & T Communications of Southwest, Inc. v. Pub. Serv. Comm'n,* 62 S.W.3d 545, 548 (Mo.App. W.D.2001). "The basic findings are those on which the ultimate finding rests; the basic findings are more detailed than the ultimate finding but less detailed than a summary of the evidence." *Noranda Aluminum, Inc.,* 24 S.W.3d at 246 (quoting *St. Louis County Water Co. v. State Highway Comm'n of Mo.,* 386 S.W.2d 119, 125 (Mo. 1964)) (quoting 2 Davis, Administrative Law Treatise, § 16.06, at 450–51). Although detailed summaries of the facts are not required in an agency's order and report, "the findings should be sufficient to demonstrate how the controlling issues have been decided." *Id.* "[U]nequivocal affirmative findings of fact" are required.

*Parrott v. HQ, Inc.*, 907 S.W.2d 236, 244 (Mo.App. S.D.1995).

In this case, the Commission's Second Order fails to provide a reasonable basis for its decision. *Int'l. Telecharge, Inc.*, 806 S.W.2d at 684. For that reason, the Commission's Second Order does not contain findings of fact that permit intelligent review of its decision. *Id.* Accordingly, no basis exists for determining whether the Commission's decision is supported by substantial and competent evidence. Therefore, the case is dismissed and the Commission's Second Order is remanded to the Commission with instructions to provide clearer, more detailed findings of fact that include the rationale for the findings and comply with sections 386.420 and 536.090, RSMo 2000.

All concur.